# DENNY *v.* BENNETT.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 67. Argued and submitted November 8, 1888. — Decided November 26, 1888.

The act of the legislature of Minnesota of March 7, 1881, c. 148, entitled "An Act to prevent debtors from giving preference to creditors, and to secure the equal distribution of the property of debtors among their creditors, and for the release of debts against debtors," which provides that, whenever the property of a debtor is seized by an attachment or execution against him, he may make an assignment of all his property and estate, not exempt by law, for the equal benefit of all his creditors who shall file releases of their debts and claims, and that his property shall be equitably distributed among such creditors is not repugnant to the Constitution of the United States, so far as it affects citizens of States other than Minnesota.

Statutes limiting the right of the creditor to enforce his claims against the property of the debtor are part of all contracts made after they take effect, and do not impair the obligation of such contracts.

A clause in an assignment for the benefit of creditors under the Minnesota Statute of March 7, 1881, directing the payment to the assignor of any

surplus remaining after payment in full to creditors proving their debts, does not invalidate the assignment.

A state statute providing for the distribution of the property of a debtor among his creditors, and his discharge from his debts, does not release a debt due to a citizen of another State, who does not prove his debt, nor become subject to the jurisdiction of the court.

An application by the assignee of an insolvent debtor, under a state statute, to be admitted as a party in a suit pending in a Circuit Court of the United States against the insolvent, in which his property was attached by the marshal on mesne process, and for a dissolution of the attachment, and an order of the Circuit Court allowing him to become a party, but refusing to dissolve the attachment, do not make the assignee a party to that suit without further action on his part, and do not estop him from setting up a claim to the property in the hands of the marshal under the attachment.

TROVER against the marshal of the Circuit Court of the United States for the District of Minnesota for the conversion of property seized under a writ of attachment issuing out of that court. Verdict for the plaintiff, and judgment on the verdict. The defendant sued out this writ of error. The case is stated in the opinion.

Mr. C. D. O'Brien for plaintiff in error cited: *Hutchinson* v. *Lord*, 1 Wisconsin, 286; *S. C.* 60 Am. Dec. 381; *Bogert* v. *Phelps*, 14 Wisconsin, 88, 95; *Thayer* v. *Willet*, 5 Bosworth (N. Y.) 344, 354; *Fallon* v. *McCunn*, 7 Bosworth (N. Y.) 141; *Damon* v. *Bryant*, 2 Pick. 411; *Pratt* v. *Wheeler*, 6 Gray, 520; *Owen* v. *Dixon*, 17 Conn. 492, 497, 498; *Gilman* v. *Lockwood*, 4 Wall. 409; *Ogden* v. *Saunders*, 12 Wheat. 213; *Sturges* v. *Crowninshield*, 4 Wheat. 122; *Baldwin* v. *Hale*, 1 Wall. 223; *Union Bank of Tenn.* v. *Jolly's Administrators*, 18 How. 503; *Hyde* v. *Stone*, 20 How. 170; *Payne* v. *Hook*, 7 Wall. 425; *Green* v. *Clarke*, 2 Kernan (12 N. Y.) 343; *Bigelow* v. *Windsor*, 1 Gray, 299, 301; *King* v. *Chase*, 15 N. H. 1; *S. C.* 41 Am. Dec. 675; *Robinson* v. *Leavitt*, 7 N. H. 73; *Vooght* v. *Wincht*, 2 B. & Ald. 662; *Outram* v. *Morewood*, 3 East, 346; *Strutt* v. *Bovington*, 5 Esp. 56; *Calhoun's Lessee* v. *Dunning*, 4 Dall. 120; *Eastman* v. *Cooper*, 15 Pick. 276; *S. C.* 26 Am. Dec. 600; *LeGuen* v. *Gouverneur*, 1 Johns. Cas. 436; *S. C.* 1 Am. Dec. 121; *Buck* v. *Colbath*, 3 Wall. 334; *Taylor* v. *Carryl*, 20 How.

583; *Freeman* v. *Howe*, 24 How. 450; *Peck* v. *Jenness*, 7 How. 612, 624; *Hagan* v. *Lucas*, 10 Pet. 400; *Wallace* v. *McConnell*, 13 Pet. 136.

*Mr. Ambrose N. Merrick* for defendant in error submitted on his brief, citing: *In Re Mann*, 32 Minnesota, 60; *Simon* v. *Mann*, 33 Minnesota, 412; *Bennett* v. *Denny*, 33 Minnesota, 530; *Mather* v. *Nesbit*, 13 Fed. Rep. 872; *Weston* v. *Loyhed*, 30 Minnesota, 221, 222; *Wendell* v. *Lebon*, 30 Minnesota, 234; *Sloane* v. *Chiniquy*, 22 Fed. Rep. 213; *Kingman* v. *Barton*, 24 Minnesota, 295; *Swart* v. *Thomas*, 26 Minnesota, 141, 143.

MR. JUSTICE MILLER delivered the opinion of the court.

This is a writ of error to the Supreme Court of the State of Minnesota.

The principal point raised by the assignments of error is, that an act of the legislature of that State, approved March 7, 1881, c. 148, Laws of 1881, p. 193, is repugnant to the Constitution of the United States so far as it affects citizens of States other than Minnesota. That statute provides that whenever the property of a debtor is seized by an attachment or execution against him he may make an assignment of all his property and estate, not exempt by law, for the equal benefit of all his creditors who shall file releases of their debts and claims, and his property shall be equitably distributed among such creditors.

This is the only assignment of error, with the exception of one other, which will be considered farther on, that, by any fair construction, can be said to come within the jurisdiction of this court, though others are set out in the brief of counsel, relative to fraud in the assignment made by the debtors in this instance, which raise no Federal question.

The facts may be briefly stated as follows: On the 31st day of December, 1883, J. H. Purdy & Co. brought a suit in the Fourth Judicial District Court of Hennepin County, in the State of Minnesota, against Axel B. Van Norman and Gustave Van Norman, partners, under the firm name of Van Norman & Brother, and on the same day procured a writ of attachment

to issue in that suit, which was levied upon a part of the goods of the defendants. On the same day that firm made a deed of assignment to Charles C. Bennett, the present defendant in error, reciting the issue and levy of this attachment, and assigning to him "all the lands, tenements, hereditaments and appurtenances, goods, chattels, choses in action, claims, demands, property and effects of every description," belonging to them wherever situated. The instrument also provided that the assignee was "to take possession of the property, and to sell and dispose of the same with all reasonable diligence, and to convert the same into money; and, also, to collect all such debts and demands hereby assigned as may be collectible, and with and out of the proceeds of such sales and collections to pay and discharge all the just and reasonable expenses, costs and charges of executing the assignment," including a reasonable compensation to the assignee for his services.

The assignment then directs the assignee to proceed as follows:

"To pay and discharge in full, if the residue of said proceeds be sufficient for that purpose, all the debts and liabilities now due, or to become due, from said party of the first part to all their creditors who shall file releases of their debts and claims against the said party of the first part, as by law provided, together with all interest due, and to become due thereon; and if the residue of said proceeds shall not be sufficient to pay said debts and liabilities and interest in full, then to apply the same, so far as they will extend, to the payment of the said debts and liabilities and interest proportionably to their respective amounts, and in accordance with the statute in such case made and provided; and if, after payment of all the costs, charges and expenses attending the execution of said trust, and the payment and discharge in full of all the said lawful debts owing by the said party of the first part, there shall be any surplus of the said proceeds remaining in the hands of the party of the second part, then to repay such surplus to the party of the first part, their executors, administrators, or assigns."

It appears that the goods and chattels mentioned in this

deed of trust were, under its authority, delivered to Bennett, the assignee, or partly so, the sheriff having closed the doors of the store in which they were situated, at the time that Denny, the plaintiff in error, seized them by virtue of a writ of attachment issued out of the Circuit Court of the United States for the District of Minnesota, of which he was marshal, in a suit brought by Lapp & Flershem against the firm of Van Norman & Brother. The latter action was also commenced on the 31st day of December, 1883. On January 21, 1884, after a refusal by the marshal to deliver the goods, Bennett, the assignee, made application to the United States Circuit Court to be made a party to the suit of Lapp & Flershem against Van Norman & Brother, and prayed for the dissolution of the attachment issued in favor of the plaintiffs therein. The court, on February 18, 1884, made the following order: "First. That Charles C. Bennett, assignee, do have, and he is hereby given, leave to intervene and become a party defendant herein. Second. That the motion to dissolve the attachment be, and the same is, hereby denied." Although the assignee was thus permitted to come in and be made a party, it is not shown that he ever did so, or ever appeared in the case after that time.

There is no further record in this case of any proceedings in the Circuit Court of the United States, nor in the action of *Purdy & Co.* v. *Van Norman & Brother*, but the transcript then proceeds with the suit brought by the assignee against the marshal, Henry R. Denny, in the nature of trover and conversion, for damages on account of his unlawful seizure of these same goods while they were in the hands of said assignee, and for a conversion of the same by his refusal to return them to plaintiff. This suit was decided in favor of Bennett, the assignee, in the lower court, by a verdict of a jury, and upon the judgment being carried by a writ of error to the Supreme Court of the State of Minnesota it was there affirmed. In both of these courts the questions we have mentioned were raised by exceptions to the charge of the judge that the assignment was a valid one, and to the ruling that the decision of the Circuit Court of the United States on

the motion to dissolve the attachment was not a bar to the present action by the assignee.

The question of the invalidity of this Minnesota statute, as it relates to the rights of creditors, is an interesting one. The argument in favor of that proposition is twofold. First, that it impairs the obligation of contracts; and, second, that such a statute can have no extraterritorial operation, and cannot, therefore, be binding on creditors living in a different State from that of the debtor and of the *situs* of his property.

With regard to the first of these it may be conceded that, so far as an attempt might be made to apply this statute to contracts in existence before it was enacted, it would be liable to the objection raised, and therefore in such a case of no effect. But the doctrine has been long settled that statutes limiting the right of the creditor to enforce his claims against the property of the debtor, which are in existence at the time the contracts are made, are not void, but are within the legislative power of the States where the property and the debtor are to be found. The courts of the country abound in decisions of this class, exempting property from execution and attachment, no limit having been fixed to the amount — providing for a valuation at which alone, or generally two-thirds of which, the property can be brought to a forced sale to discharge the debt — granting stays of execution after judgment, and in numerous ways holding that, as to contracts made after the passage of such laws, the legislative enactments regulating the rights of the creditors in the enforcement of their claims are valid. These statutes, exempting the homestead of the debtor, perhaps with many acres of land adjoining it, the books and library of the professional man, the horse and buggy and surgical implements of the physician, or the household furniture, horses, cows, and other articles belonging to the debtor, have all been held to be valid, without reference to the residence of the creditor, as applied to contracts made after their passage.

The principle is well stated in the case of *Edwards* v. *Kearzey*, 96 U. S. 595, 603, in the following language:

" The inhibition of the Constitution is wholly prospective. The States may legislate as to contracts thereafter made, as they may see fit. It is only those in existence when the hostile law is passed that are protected from its effect."

See also *Railroad Co.* v. *Rock,* 4 Wall. 177 ; *University* v. *People,* 99 U. S. 309; *Knox* v. *Exchange Bank,* 12 Wall. 379.

The doctrine was very early announced in the case of *Wales* v. *Stetson,* 2 Mass. 143; and in the separate opinion of Mr. Justice Story in *Trustees of Dartmouth College* v. *Woodward,* 4 Wheat. 518, 666, decided in 1819, it was suggested that in a grant of a charter to a corporation a reservation of the right to repeal it would be valid. This has been acted upon, and such action has been held in many cases to be valid.

The later case of *Greenwood* v. *Freight Co.,* 105 U. S. 13, contains a review of this whole subject, so far as contracts are concerned.

No reason has been suggested why the legislature could not exempt all interests in landed estate from execution and sale under judgments against the owner, and perhaps all his personal property. However this may be, it is very certain that the established construction of the Constitution of the United States against impairing the obligation of contracts requires that statutes of this class shall be construed to be parts of all contracts made when they are in existence, and therefore cannot be held to impair their obligation.

The act in question in the present case does not exceed many of the class to which we have alluded in its effect in enabling the debtor to dispose of his property without regard to the ordinary judicial proceedings to subject it to forced sale. The power is conceded, when not forbidden by the statutes of a State, to a failing debtor to make a general assignment of his property for the benefit of his creditors, as this one does. It is further admitted that in such an assignment, if there be nothing fraudulent otherwise, he can prefer some creditors over others, and that he can secure to some payment in full, while he leaves others who will certainly get nothing out of his estate. When this is done, the creditors who are not provided for in the assignment, are left in a worse condition than

they are where it is done under the present law, because in the first instance they would certainly get nothing out of the debtor's property, though they would retain a right to proceed against him by a judgment and execution; while in the present case they have the option of pursuing that course, or of coming in with the other creditors, executing releases, and obtaining their share of the property assigned. Here, instead of naming the preferred creditors, the assignor gives his property to all who will execute a release of their claims against him. Nobody is required by the statute to do so unless he thinks it is to his interest. The creditor who executes such a release gets his share of the property assigned, while the one who does not receives nothing, unless there may be a surplus left after the payment of the releasors; but he is not hindered or delayed in obtaining a judgment against the debtor, or in levying upon any other property, if such can be found, not conveyed by the instrument, or upon any afterwards acquired by the debtor. The latter remains liable, notwithstanding this statute and this assignment, as he always was, for the debt of the non-assenting creditor.

It is not easy, then, to see how this statute can be more complained of as impairing the obligation of contracts than the statutes of exemption which we have already mentioned, and the principles which lie at the foundation of all voluntary assignments for the benefit of creditors with preferences that exhaust the fund assigned.

But it is said in answer to this view of the subject that there is a clause in the instrument now before us directing that if there shall be a surplus after the payment in full of all the creditors who shall release the assignors, it shall be paid over to the latter. There are two answers to this. If that clause or provision is unlawful and violates the laws of the State of Minnesota, or the Constitution of the United States, it can be rejected, and the remainder of the assignment permitted to stand. The statute under which the assignment was made does not require that such surplus shall be paid over to the debtors. The Supreme Court of that State has held that such a fund may be arrested, when proper proceedings are had,

before it gets to the debtor's hands; and, certainly, wherever that surplus may be found, and however it may be got at by any of the processes of law, it is liable to be taken by the non-releasing creditor. He can pursue all the remedies which the law gives him as against any fund, property, chose in action, or estate liable to the payment of his demand.

But it is said that this statute of Minnesota is void under the principles laid down by this court in the cases of *Sturges* v. *Crowninshield*, 4 Wheat. 122; *Ogden* v. *Saunders*, 12 Wheat. 213; *Baldwin* v. *Hale*, 1 Wall. 223, and *Gilman* v. *Lockwood*, 4 Wall. 409. The proposition lying at the foundation of all these decisions is, that a statute of a State, being without force in any other State, cannot discharge a debtor from a debt held by a citizen of such other State. One of the best statements of the doctrine is found in the following language used in the latest case on the subject, that of *Gilman* v. *Lockwood, supra.*

" State legislatures may pass insolvent laws, provided there be no act of Congress establishing a uniform system of bankruptcy conflicting with their provisions, and provided that the law itself be so framed that it does not impair the obligation of contracts. Certificates of discharge, however, granted under such a law, cannot be pleaded in bar of an action brought by a citizen of another State in the courts of the United States, or of any other State than that where the discharge was obtained, unless it appear that the plaintiff proved his debt against the defendant's estate in insolvency, or in some manner became a party to the proceedings. Insolvent laws of one State cannot discharge the contracts of citizens of other States; because such laws have no extraterritorial operation, and consequently the tribunal sitting under them, unless in cases where a citizen of such other State voluntarily becomes a party to the proceeding, has no jurisdiction of the cause."

This is conceived to be a clear and accurate presentation of the doctrine of the preceding cases, and it will be seen that the substance of the restrictive principle goes no farther than to prohibit, or to make invalid, the discharge of a debt held by a citizen of another State than that where the court is sitting, who does not appear and take part, or is not otherwise

brought within the jurisdiction of the court granting the discharge. In other words, whatever the court before whom such proceedings are had may do with regard to the disposition of the property of the debtor, it has no power to release him from the obligation of a contract which he owes to a resident of another State, who is not personally subjected to the jurisdiction of the court. Any one who will take the trouble to examine all these cases will perceive that the objection to the extraterritorial operation of a state insolvent law is, that it cannot, like the bankrupt law passed by Congress under its constitutional grant of power, release all debtors from the obligation of the debt. The authority to deal with the property of the debtor within the State, so far as it does not impair the obligation of contracts, is conceded, but the power to release him, which is one of the usual elements of all bankrupt laws, does not belong to the legislature where the creditor is not within the control of the court.

The Minnesota statute makes no provision for any such release. The creditor who became such after the statute was passed cannot complain that the obligation of his contract is impaired, because the law was a part of the contract at the time he made it, nor can he say that his contract is destroyed and the debtor discharged from it, which is of the essence of a bankrupt law, because no such decree can be made by the court, neither does the law have any such effect, though the obligation of the debtor to pay may be cancelled or discharged by the voluntary act of the creditor who makes such release for a consideration which to him seems to be sufficient.

The other assignment of error, pressed by counsel for plaintiff in error, that the proceedings in the Circuit Court of the United States, in relation to the dissolution of the attachment and Bennett's becoming a party to the suit there pending, are an estoppel of the claim now set up by him, is not in our opinion entitled to much consideration. The order of the court in relation to that matter, above quoted, merely gave leave to the assignee to become a party to that suit, at the same time overruling the other branch of the motion asking for a dissolution of the attachment. It does not appear by

the record that Bennett ever did make himself a party to that suit, and of course could be bound by no judgment rendered in regard to it. Even if he can be supposed to be a party, so far as the motion to dissolve the attachment is concerned, we concur with the Supreme Court of the State of Minnesota, *Bennett* v. *Denny*, 33 Minnesota, 530, in holding that " it was merely a decision of a motion or summary application, which is not to be regarded in the light of *res adjudicata*, or as so far conclusive upon the parties as to prevent their drawing the same matters in question again in the more regular form of an action." For this they cite the decisions of their own court.

In aid of this view of the subject we may also refer to the opinion of Judge Nelson in deciding the motion to dissolve. After reciting the circumstances under which that motion was made, he said:

" It is by virtue of this seizure that the marshal holds the property. On this statement of the facts I shall not decide on this motion who has the better title and right to the possession of the property taken. . . . The writ of attachment properly issued in this suit against the debtor, and if the marshal has seized the property which belonged to Bennett, he is certainly liable in an action of trespass for the damages thereby sustained." *Lapp* v. *Van Norman*, 19 Fed. Rep. 406. See *Buck* v. *Colbath*, 3 Wall. 334.

It is therefore clear that the order of the judge refusing to dissolve the attachment was not predicated upon any decision as to the right of the possession of the property, but that he intended to leave the marshal liable to the present action, if the facts justified the claim of the assignee. Apart from this, we are not at all satisfied that the effect of this action of the Circuit Court on the suit afterwards brought by the assignee in the state court is a question of Federal cognizance. Its decision, as shown by the opinion of Judge Nelson, was not based upon any law or principle of Federal jurisprudence, and must have rested upon the general rules which govern the conclusiveness of former judicial proceedings when called in question in another case.

*The judgment of the Supreme Court of Minnesota is affirmed*

Mr. Justice Harlan dissenting.

I cannot assent to a judgment of affirmance in this case.

1. The statute of Minnesota of 1881, upon which the defendant in error rests his suit for damages, provides, among other things: "Whenever the property of any debtor is attached or levied upon by any officer, by virtue of any writ or process issued out of a court of record of this State in favor of any creditor or garnishment made against any debtor, such debtor may, within ten days after the levying of such attachment, process or garnishment shall have been made, make an assignment of all his property and estate, not exempt by law, for the equal benefit of all his creditors, in proportion to their respective valid claims, who shall file releases of their debts and claims against such creditors as hereinafter provided, . . . . and, upon the making of such assignment, all attachments, levy or garnishment so made shall be dissolved upon the appointment and qualification of an assignee or receiver, and thereupon the officers shall deliver the property attached or levied upon to such assignee or receiver, unless the assignee shall, within five days after such assignment, file in the office of the clerk of the court where such attachment was issued or judgment was rendered a notice of his intention to retain such attachment, levy or garnishment, in which case any such attachment, levy or garnishment shall inure to the benefit of all the said creditors, and may be enforced by the assignee by his substitution in the action as such in the same manner as the plaintiff might have enforced the same had such assignment not been made: *Provided, however,* That this section shall not apply to cases where an execution has been issued upon a judgment in an action where the complaint has been filed in the office of the clerk of the court twenty days prior to the entry of the judgment."

This statute did not operate to dissolve the attachment which issued from the Circuit Court of the United States in favor of Lapp & Flershem; for it applies only to writs or process issued out of "a court of record of this State," that is, a court of record established under the constitution and laws of

Minnesota. If intended to embrace writs of attachment from a court of the United States, so as to vacate levies under such writs, without an order to that effect by the court under whose authority they were made, it would be inoperative. No State enactment can, *proprio vigore*, work the dissolution of an attachment issuing from a Federal court.

A different construction is inadmissible upon other grounds. By the 10th section of the statute it is provided that "No creditor of any insolvent debtor shall receive any benefit under the provisions of this act, or any payment of any share of the proceeds of the debtor's estate unless he shall have first filed with the clerk of the District Court, in consideration of the benefits of the provisions of this act, a release to the debtor of all claims other than such as may be paid under the provisions of this act, for the benefit of such debtor, and thereupon the court or judge may direct that judgment be entered discharging such debtor from all claims or debts held by creditors, who shall have filed such releases." If this act is to control the rights of the parties in the present case, the result is, that the prior right acquired by Lapp & Flershem under their suit and attachment in the Federal court is taken from them, and they are denied all interest in the proceeds as well of the property attached for their benefit as of the property assigned to Bennett, unless they give a release in full to their debtors. Such a result is not, in my judgment, consistent with the rights secured by the Constitution of the United States to the plaintiffs in error.

2. There is some misapprehension as to the time when the assignment to Bennett was actually made. But it is clear from the evidence that the marshal levied before he acquired any right in the property attached by that officer. In the brief filed in behalf of Bennett in the Circuit Court, in support of his application to be made a party in the suit of Lapp & Flershem against Van Norman & Bro., in order that he might assert his claim, as assignee, to the goods seized by the marshal, and in support also of his motion to dissolve the attachment sued out by Lapp & Flershem — which brief is part of the record before us — it is said: "The court will bear in mind

that the assignment was not made and filed until some three hours *after* the levy of the attachment by the plaintiffs [Lapp & Flershem]." And in the opinion of the Supreme Court of Minnesota in this case, it is said : "It seems that *prior to the making of the assignment in question* the defendant, as United States marshal, by virtue of process of the Circuit Court, *had attached* the assigned property." As the Federal court had jurisdiction of the suit in which was issued the attachment that came to the hands of the marshal, the goods seized by the latter were, from the moment of such seizure, in the custody of that court, so far, at least, as to prevent the *possession* of the marshal from being disturbed by an action of replevin in behalf of Bennett. *Freeman* v. *Howe*, 24 How. 450; *Buck* v. *Colbath*, 3 Wall. 334; *Krippendorf* v. *Hyde*, 110 U. S. 276; *Covell* v. *Heyman*, 111 U. S. 176; *Gumble* v. *Pitkin*, 124 U. S. 131, 145. It was said in *Lammon* v. *Feusier*, 111 U. S. 19, that even where a marshal takes the property of a person not named in the writ, "the property is in his official custody, and under the control of the court whose officer he is, and whose writ he is executing;" and that "according to the decisions of this court the rightful owner cannot maintain an action of replevin against him, nor recover the property specifically in any way, except in the court from which the writ is issued."

3. If Bennett's right to the possession of the property covered by the assignment to him had accrued before the marshal made his levy, the latter might have been liable in trespass or in trover and conversion in any court of competent jurisdiction as to parties. Here, however, the attachment, which came to the hands of the marshal, was lawfully issued and was rightfully levied. That is conceded on all sides. Was it for that officer to pass upon the validity of a claim which accrued, if at all, subsequently to his taking the goods into his possession? His writ commanded him to take the goods of Van Norman & Bro.; and he did so. He was also commanded to safely keep them to satisfy the demand of Lapp & Flershem. Could he be discharged from his obligation to so keep them except by an order of the court under whose direction he had proceeded? Indeed, if he had surrendered possession, without

leave first obtained from the Federal court, he could have been proceeded against for contempt in having parted with the possession of goods in the custody of that court. Bennett asked leave to intervene in the suit in the Federal court, and such leave was granted; but he declined to exercise the privilege accorded to him. He moved, at the same time, to dissolve the attachment, and that motion was denied; the Federal court thereby plainly indicating to the marshal a purpose to hold the property until it had adjudicated Bennett's claim. If Bennett had intervened in the suit in the Federal court, and if that court had dismissed his intervention, or adjudged his claim to be subordinate to that of Lapp' & Flershem under their attachment, he could have prosecuted an appeal to this court. *Gumble* v. *Pitkin*, 113 U. S. 545.

A marshal who levies an attachment from a Circuit Court of the United States in a suit of which it has complete jurisdiction, upon goods subject at the time to such attachment, is not, I think, liable in trover and conversion for their value, upon his refusal, in the absence of any direction of the court under whose writ they were seized, to surrender possession; especially to one whose right, if any, accrued subsequently to his levy. To hold him, under such circumstances, liable to a suit in a state court for damages, is to invite those conflicts between courts of different jurisdictions and their respective officers, which the former decisions of this court have sought to prevent.