OPINION OF THE COURT
GIBBONS, Circuit Judge.
This appeal presents questions of first impression: the applicability to Pennsylvania cognovit notes of the exemption provision of Section 522(f) of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 522(f) (Supp.III 1979); and if that section is applicable to cognovit notes, its constitutionality. The case is before us on appeal from a bankruptcy judge upon agreement of the parties under that Act, Pub.L.No. 95-598, Title IV, § 405, 92 Stat. 2685 (1978). The bankruptcy judge held that the lien of a cognovit note was a judgment lien subject to avoidance to the extent permitted by Section 522, and that as applied the section is constitutional. We affirm.
I.
In 1973, Charles E. Ashe and Susan J. Ashe (the Debtors) borrowed $45,287.62 from the Commonwealth National Bank (the Bank). This commercial loan was evidenced by a promissory note containing a confession of judgment clause in the form commonly used in Pennsylvania. The judgment note was duly filed with the Prothon-otary’s Office of the Court of Common Pleas of Dauphin County. At that time the Debtors owned two pieces of real estate in Dauphin County, one of which was their residence. The note was refiled in 1978 in the amount of $43,733.47. The loan became delinquent, and on May 30, 1979, the Bank filed a complaint in assumpsit in the Court of Common Pleas of Dauphin County. This action was necessary because under Pennsylvania law, in order to obtain a writ of execution on residential property, a separate action is required in addition to the cognovit note judgment. Judgment in the separate action merges, so that the judgment lien relates back to the date the confessed judgment note was filed.[1] The Bank obtained a default judgment for $54,010.83, and a writ of execution was issued on August 31,1979. An execution sale was sched *108 uled for October 11, 1979, but on October 10, the Debtors filed a Petition under Chapter 7 of the Bankruptcy Reform Act, 11 U.S.C. § 701 et seq. This resulted in a stay of the execution sale.
The Bankruptcy Reform Act provides that “an individual debtor may exempt from property of the estate . .. property that is specified in subsection (d). . . . ” 11 U.S.C. § 522(b)(1). Subsection (d) permits exemption of “[t]he debtor’s aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debt- or .. . uses as a residence. . . . ” 11 U.S.C. § 522(d)(1). The debtors claimed exemptions with respect to their Dauphin County residence in the aggregate amount of $15,-000. When their bankruptcy petition was filed, the fair market value of the residence did not exceed $50,000, while encumbrances on it listed on their Bankruptcy Schedule A-2 (Creditors Holding Security) totaled $85,244.79. These encumbrances included liens having priority under Pennsylvania law over that of the Bank totaling $9,118.49. Thus the prior encumbrances and the Bank’s lien exceeded the fair market value of the residence.
The Bankruptcy Reform Act also provides that “[n]otwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is — (1) a judicial lien.... ” 11 U.S.C. § 522(f)(1). The Bank filed a timely objection to the allowance of the $15,000 exemption insofar as its lien would be impaired, but after a hearing the Bankruptcy Court held that the lien was a judgment lien, avoidable by virtue of Section 522(f)(1). The economic effect of this ruling is to increase interests in the residence having priority over the Bank’s lien by $15,000. Thus if an execution sale brought a bid of $50,000 the Bank would recover only $25,881.51, rather than $40,881.51. The Bank contended that if Section 552(f)(1) was so applied, it was unconstitutional. That contention was rejected by the Bankruptcy Court, and this appeal followed.[2]
II.
The Bank contends that the court erred in holding that the lien of a cognovit note is a judicial lien within the meaning of Section 522(f)(1). Since a decision in its favor on that question would avoid the necessity for considering the Bank’s contention that the law is unconstitutional, we turn to that question first. The term “judicial lien” is defined in the Bankruptcy Reform Act as a “lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.” 11 U.S.C. § 101(27). The term “lien” is defined as a “charge against or interest in property to secure payment of a debt or performance of an obligation.” 11 U.S.C. § 101(28). Thus a “judicial lien” is a charge against or interest in property to secure payment of a debt, obtained by judgment or other legal proceedings. Only such liens are avoidable under Section 522(f)(1). A “security interest,” defined as a “lien created by an agreement,” 11 U.S.C. § 101(37), is not avoidable under that section.[3] Thus a mortgage, for example, is a lien, since it is a charge against or interest in property to secure payment of a debt. It is not, however, affected by Section 522(f)(1) because the charge against or interest in property is created by a conveyance or contract rather than by a judgment or other legal proceeding.
Under Pennsylvania law a confession of judgment for money “may be entered by the prothonotary . .. without the *109 agency of an attorney and without the filing of a complaint, declaration, or confession, for the amount which may appear to be due from the face of the instrument.” Pa.Rules Civ.P. 2951(a), 42 Pa.Cons.Stat. Ann. (Purdon 1975).[4] Once entered, the judgment note, as in the case of a litigated judgment, results in a lien upon all real property of the debtor in the county of filing. 42 Pa.Cons.Stat.Ann. § 4303 (Pur-don 1981); Scott Factors, Inc. v. Hartley, 425 Pa. 290, 228 A.2d 887 (1967); In re Fell, 18 F.Supp. 989 (E.D.Pa.1937). Moreover, the priority of such liens is determined by the date they are left for entry by the prothonotary. 42 Pa.Cons.Stat.Ann. § 8141 (Purdon Pamph. 1981). As a practical matter, therefore, the taking of a cognovit note in connection with a loan to an owner of real estate serves most of the same functions as a mortgage. The chief difference between the two security devices is that a mortgage requires a conveyance of specific property, while the cognovit note creates a lien on all real property of the debtor in the county, with no need for a description or conveyance. The Bank contends that because cognovit notes are consensual undertakings they should be treated, like mortgages, as “security interests” rather than “judicial liens.” But that is equally true of consent judgments settling initially litigated matters. With either, the lien is created not by the agreement, but by the judgment. Literally, both a filed cognovit note and a consent judgment fit within the definition of “judicial lien” in 11 U.S.C. § 101(27).
When Congress wrote the definitions of judicial lien and security interest, the cog-novit note problem was not unknown. Under prior Sections 60 and 61 of the Bankruptcy Act dealing with voidable preferences including liens obtained by judgment, those obtained by confession were considered to be ordinary judgment liens. See In re Fell, 18 F.Supp. 989, 991 (E.D.Pa. 1937); Nogi v. Greenwood, 1 F.Supp. 60, 62-63 (M.D.Pa.1932); In re Albright, 18 F.2d 591, 592 (E.D.Pa.1927), aff’d sub nom. Shick v. Goodman, 33 F.2d 291 (3d Cir.), cert. denied, 280 U.S. 561, 50 S.Ct. 19, 74 L.Ed. 616 (1929); Greenberger v. Schwartz, 261 Pa. 265, 104 A. 573 (1918); 4 Collier on Bankruptcy 116, ¶ 67.08 n.1 (14th ed. 1978). Given that background, and in the absence of any indication in the legislative history of the Bankruptcy Reform Act that something else was intended, we would not be justified in rewriting Section 522(f)(1) and Sections 101(27) and (28) so as to treat cognovit note judgment liens differently from all other judgment liens. Thus we reject the Bank’s contention that Section 522(f)(1) is inapplicable.
III.
The holding in Part II requires the consideration of the Bank’s constitutional challenge. It contends that prior to the enactment of the Bankruptcy Reform Act it had a valid property interest under Pennsylvania law in all the Debtor’s real estate in Dauphin County, and that retroactive application of the exemption provision in Section 522(f)(1) would be a taking of that property interest, to the extent of $15,000, without due process of law. In advancing that contention the Bank relies chiefly on Louisville Joint Stock Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), which held unconstitutional certain provisions of the Frazier-Lemke Act, Pub.L.No. 486, ch. 869, 48 Stat. 1289 (1934). The United States, which intervened in the action pursuant to 28 U.S.C. § 2403, contends that Section 522(f)(1) applies to liens of cognovit notes filed prior to its enactment, and that such application does not violate the Fifth .Amendment.
In approaching the consideration of the Bank’s constitutional claim it is appropriate to narrow the inquiry by reference to issues which are not involved. The Bank makes no contention that congressional power to make “uniform Laws on the subject of Bankruptcies” [5] does not include the power *110 to provide a uniform minimum standard for exemptions.[6] Nor does the Bank contend that a Bankruptcy law is unconstitutional which retroactively discharges debtors from the state law property interests represented by their otherwise enforceable contractual undertakings.[7] It is no objection to Bankruptcy legislation that it may affect preexisting relationships under state law. Indeed the retroactive alteration of legal relationships is the essence of such legislation.
Moreover we are not dealing with the analytically distinct Fifth Amendment problem of taking private property for public use without just compensation. The taking clause of the Fifth Amendment imposes a distinct substantive standard — just compensation — when private property is diverted to public uses, even when the diversion takes place in the course of a bankruptcy proceeding. See Regional Rail Reorganization Act Cases, 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974); New Haven Inclusion Cases, 399 U.S. 392, 90 S.Ct. 2054, 26 L.Ed.2d 691 (1970); In re Penn Central Transportation Company, 494 F.2d 270, 278-79 (3d Cir. 1974). That substantive rule has been incorporated into the Fourteenth Amendment due process clause with respect to state takings for public purposes. Brooks-Scanlon Co. v. Railroad Commission of Louisiana, 251 U.S. 396, 40 S.Ct. 183, 64 L.Ed. 323 (1920). It has nothing to do, however, with legislation which, while it affects the existence or value of a property right, does not devote the property to public use. The line between governmental regulation and taking for public use may not always be distinct. Compare Agins v. Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); Penn Central Transportation Co., v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); and Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) with Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962); Armstrong v. United States, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960); United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946); and Nectow v. Cambridge, 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928). But the consequences of classifying a law as an economic regulation rather than a taking for public use are clear. Only if a taking for public use is found does the just compensation standard apply. Plainly Section 522(f)(1) is an economic regulation rather than a taking for public use. If the exemption works a taking, it is a taking for the private use of the Debtors, not for the general use of the public or the particular use of a governmental agency.
The question, then, is a narrow one: to what extent does the due process clause of the Fifth Amendment place substantive limits upon the plenary grant of legislative authority in the bankruptcy clause of the Constitution. The government urges, and we agree, that federal bankruptcy legislation is classic economic regulation legislation, and should be measured, absent a taking for public use, for substantive due process purposes by the standard generally applicable to such legislation. Since United States v. Carolene Products Co., 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938), economic regulation has been sustained against substantive due process challenges if it rests upon a rational basis. See, e.g., Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976); Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).
Certainly the congressional decision reflected in Section 522(f)(1) to establish a *111 federal minimum exemption, with state exemptions as an alternative, is a rational resolution of the competing interests of debtors seeking rehabilitation and creditors seeking payment. Homestead exemptions created by state law successfully met constitutional challenges prior to the enactment of the Bankruptcy Act of 1898. Denny v. Bennett, 128 U.S. 489, 9 S.Ct. 134, 32 L.Ed. 491 (1888). Congressional authority to leave a debtor with what it considers to be the wherewithal necessary for a fresh start in economic life is at least as broad.
The Bank urges, however, that while Congress exercising its bankruptcy powers can exempt property from the reach of general unsecured creditors, it cannot affect the “property” rights of secured creditors under state law. There was a time, prior to Carolene Products, when that position might command respectful attention. But judges are no longer free to impose through the due process clause of the Fifth Amendment their own views as to substantive limitations upon plenary grants of congressional legislative authority.. It is settled that federal bankruptcy law can eliminate vested property rights in contractual undertakings sanctioned by state law. There is no reason why that plenary power may not, if Congress should say so, operate on property rights, originating out of contractual undertakings, which state law recognizes as liens upon specific property.[8] If Congress goes too far in undermining the security for extensions of credit when exercising plenary legislative power under the bankruptcy clause, the result may be that credit will be unavailable. But that is a matter of policy judgment for the legislative branch. It has chosen in Section 522(f)(1) to strike the balance between security for obligations and rehabilitation for debtors by subjecting those state law property interests resulting from judicial liens to a federal homestead exemption, while leaving intact mortgages on specific property. It might have gone further. But the choice it made to subject only judgment liens to the exemption certainly satisfies rational basis review.
We recognize that Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), is significant authority suggesting that substantive due process limitations on the bankruptcy power are greater than we have recognized. For several reasons we conclude that it is not controlling. First, despite the eminence of its author, the opinion hopelessly confuses the problem of taking property for public use without compensation with the distinct problem of substantive due process limitations upon plenary congressional legislative powers. See 295 U.S. at 601, 55 S.Ct. at 868. The taking analysis simply cannot be reconciled with that made in the cases referred to above, distinguishing between regulation on the one hand and taking for public use on the other. If Radford stands for the proposition that the just compensation standard applies to economic regulations which have the effect of changing the relative economic positions of property owners, it has been discredited by those cases. Second, as a substantive due process holding, the intense scrutiny the opinion applied to the Frazier-Lemke Act is entirely inconsistent with the standard for such scrutiny announced in Carolene Products and its progeny. Finally, even before Carolene Products, Radford was effectively limited, if not tacitly overruled, by the decision in Wright v. Vinton Branch of the Mountain Bank of Roanoke, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937), upholding a slightly revised version of the Frazier-Lemke Act. See Helvering v. Griffiths, 318 U.S. 371, 400-401 & n.52, 63 S.Ct. 636, 652 & n.52, 87 L.Ed. 843 (1943).
IV.
We hold, then, that Section 522(f)(1) applies to cognovit note judgment liens, and that as applied it is constitutional.
*112 The judgment appealed from will be affirmed.

. “As to any residential real property, a plaintiff shall not have the right to levy, execute or garnish on the basis of any judgment or decree on confession, whether by amicable action or otherwise, or on a note, bond or other instrument in writing confessing judgment until plaintiff, utilizing such procedures as may be provided in the Pennsylvania Rules of Civil Procedure, files an appropriate action and proceeds to judgment or decree against defendant as in any original action. The judgment by confession shall be changed as may be appropriate by a judgment, order or decree entered by the court in the action. After the above mentioned original action has been prosecuted and a judgment obtained, that judgment shall merge with the confessed judgment and the confessed judgment shall be conformed as to amount and execution shall be had on the confessed judgment. The parties to the action shall have the same rights as parties to other original proceedings. Nothing in this act shall prohibit a residential mortgage lender from proceeding by action in mortgage foreclosure in lieu of judgment by confession if the residential mortgage lender so desires.” Act of Jan. 30, 1974, P.L. 13, No. 6, § 407(a), as amended, Act of Oct. 5, 1978, P.L. 1100, No. 258, § 1, Pa.Stat. Ann. tit. 41, § 407(a) (Purdon Supp. 1981-82).

. All Bankruptcy Courts in Pennsylvania which have considered these issues have reached similar conclusions. In re Burkholder, 11 B.R. 346 (Bk.E.D.Pa.1981); In re Smith, Bk.No. 5-80-00081 (Bk.M.D.Pa.1980); In re Eminhizer, Bk.No. 1-80-00090 (Bk.M.D.Pa.1980); In re Natale, 5 B.R. 454 (Bk.E.D.Pa.1980).

. The Bankruptcy Act also recognizes “statutory liens,” 11 U.S.C. § 101(38), but they are not relevant for purposes of this case.

. See generally, Goodrich-Amram 2d, “Confession of Judgment for Money”, §§ 2950:1, et seq.; Shuchman, Handbook on the Use of Judgment Notes In Pennsylvania (1961).

. U.S.Const. art. I, § 8, cl. 4.

. Cf. Hanover National Bank v. Moyses, 186 U.S. 181, 189-90, 22 S.Ct. 857, 861, 46 L.Ed. 1113 (1902) (recognition in Bankruptcy Act of 1898 of state exemption law is valid).

. Compare Sturges v. Crowninshield, 17 U.S. (4 Wheat.) 122, 4 L.Ed. 529 (1819) (state insolvency law applicable to contracts made prior to its enactment violates impairment of contracts clause) with Hanover National Bank v. Moyses, 186 U.S. 181, 188, 22 S.Ct. 857, 860, 46 L.Ed. 1113 (1902) (“The subject of ‘bankruptcies’ includes the power to discharge the debtor from his contracts and legal liabilities, as well as to distribute his property. The grant to Congress involves the power to impair the obligation of contracts, and this the States were forbidden to do.”).

. But see Rodrock v. Security Industrial Bank, 642 F.2d 1193 (10th Cir. 1981), cert. granted sub nom. U.S. v. Security Industrial Bank, 50 U.S.L.W. 3479 (U.S. Dec. 15, 1981), holding that application of Section 522(f) to liens created by state law prior to its enactment is unconstitutional. We decline to follow that holding.”