COMSTOCK v. CORBIN.

1. TRUSTS—CONTRIBUTION—EXONERATION—EQUITY—RELIEF.

> Plaintiff, in a suit for exoneration, was trustee of certain real estate in which several stockholders of the A. Motorcar Company held equitable rights, arising out of their several indorsements of the notes of that corporation. As trustee plaintiff had executed notes amounting to $6,000, indorsed by two of the defendants. He also owed to the bank a larger amount indorsed by others of the defendants, being a part of the sum borrowed to secure title to the real property of the corporation. It was provided by the trust agreement that complainant should control and manage the real estate and apply funds realized on expenses and an incumbrance on the land, which should only

be sold with the consent of the *cestuis que trustent*, and the balance remaining should be applied first to pay the incumbrances and notes referred to and the remainder equally divided between the parties to the trust. Two notes for $8,500 each were executed by the trustee and the defendants to borrow funds for the purchase of stock in the company, and later divided into eight notes, signed by each of them as maker or indorser. By a later agreement the trustee was authorized to borrow $24,000 to pay off the trust against the realty and in case of a sale of the same the proceeds should be applied to pay off the notes and loans entered into as part of the trust arrangement. No compensation went to the trustee. On the notes maturing defendants failed to liquidate and the holder brought assumpsit against complainant and he in turn filed a bill to compel the others to exonerate him from payment of the claims. It was also charged that two defendants declined to become responsible on some notes issued by complainant. *Held*, that a demurrer to the bill was rightly sustained and that in the absence of averments that the defendants were insolvent or that they had violated the agreement or that complainant had actually paid any debts on which the defendants were liable, the bill could not be maintained.

2. SAME—EXONERATION—CONTRIBUTION—JOINT OBLIGATION.

The right of contribution arises when one of several parties who are liable to pay a common debt or obligation discharges it for the benefit of all, when the right arises to call upon the co-obligors for contribution. The right of exoneration is recognized where the person secondarily liable, as, *e. g.*, a surety, is required to pay the debt; or in certain instances he may compel the person primarily liable to discharge the indebtedness.

3. SAME—SURETYSHIP.

No relationship of principal and surety was created, but complainant was rather in the position of a joint obligor having an equal interest with the others, and was not entitled to the equitable remedy of exoneration.

Appeal from Alpena; Widdis, J., presiding. Submitted April 12, 1916. (Docket No. 56.) Decided June 1, 1916.

Bill by William A. Comstock against John A. Corbin and others for exoneration from liability on certain promissory notes made or indorsed by complainant as trustee. From a decree for complainant, defendants appeal. Reversed.

*Henry, Henry & Henry,* for complainant.

*I. S. Canfield,* for defendants Corbin, Hill, Collins, and Fred N. Potter.

*Frank T. Hinks,* for defendants James J. Potter and John D. Potter.

KUHN, J. This case has many facts in common with the case of *Comstock* v. *Potter, ante,* 629 (158 N. W. 102), in which the opinion of the court is written by Mr. Chief Justice STONE. In that case the bill of complaint was a bill for contribution, but in this case it is in the nature of a bill for exoneration. A repetition of some of the essential facts is necessary here, so as to present the questions involved.

On May 11, 1912, the plaintiff and all the defendants in this suit, with the exception of the Alpena County Savings Bank, were stockholders in the Alpena Motorcar Company, a Michigan corporation doing business and having its office at Alpena, Mich. Prior to that date all the parties had become indorsers on the commercial paper of the Alpena Motorcar Company. Seventeen thousand dollars had been borrowed from the Alpena County Savings Bank on two promissory notes of $8,500 each executed by the Alpena Motorcar Company as maker and indorsed by the plaintiff and the defendants Roberson, Fred N. Potter, Corbin, Hill, and Collins. Six thousand dollars had been borrowed from the said Alpena County Savings Bank on two promissory notes of $3,000 each, each executed by the said Alpena Motorcar Company as maker and indorsed by

191 Mich.—41.

the defendants James J. Potter and John D. Potter. Three thousand dollars had been borrowed from the defendant Culligan on a note executed by the plaintiff as trustee. The facts with reference to the taking over by the plaintiff as trustee of the property of the Alpena Motorcar Company in Washington, known as "the Netherlands property," and the execution and contents of the written agreement known as the "trust agreement," and annexed to the bill as Exhibit A, are clearly set forth in the opinion of Mr. Justice STONE in the other case, and likewise the agreement of April 28, 1913, known as Exhibit O.

It further appears from the allegations of the bill that on November 12, 1914, "for the purpose of facilitating the renewal of the promissory notes aforesaid and of more accurately expressing the relations of the parties in respect thereto, it was verbally agreed" that the forms of the notes provided for in the trust agreement should be changed as follows: The two .$8,500 notes should be superseded and renewed as six separate promissory notes of $2,833.33 each, each to be signed by one of the parties, viz., plaintiff and the defendants Roberson, Fred N. Potter, Corbin, Hill, and Collins, and indorsed by each of the other five of the said parties. The two notes of $3,000 each should be superseded, and renewed by two other separate promissory notes of $3,000 each, one to be made by the defendant John D. Potter and indorsed by the defendant James J. Potter, and the other to be made by the defendant James J. Potter and indorsed by the defendant John D. Potter. This oral or so-called verbal agreement was partly performed by the division of the two $8,500 notes into six notes of $2,833.33 each, but the defendants John D. Potter and James J. Potter refused to carry out the agreement as to the two notes of $3,000 each.

On November 12, 1914, two notes, being renewals

of the two $3,000 notes provided for in the trust agreement of May 11, 1912, executed by the plaintiff as trustee and indorsed by the defendants James J. Potter and John D. Potter, became due. Said notes were not renewed or paid, were protested by the said Alpena County Savings Bank for nonpayment, and an action of assumpsit against the plaintiff and the defendants James J. Potter and John D. Potter to recover on the two notes was commenced by the bank and is pending.

The theory of the plaintiff's counsel as to their position in this case and as to the relief sought by the plaintiff may be obtained from the following excerpts from their brief:

"As the situation presents itself, therefore, six notes for $2,833.33 each, discounted at the Alpena County Savings Bank, are held by it. In case of the nonpayment of these notes or for the failure to renew them for any reason, plaintiff will be subject to litigation against him on the part of the bank. The two $3,000 notes are at present in suit, with plaintiff, liable to a judgment against him. It is possible that he will be unable to secure in the law action the equitable relief and results to which he is entitled.  *   *   *

"Plaintiff is financially responsible, and, if judgments are obtained against him, will be compelled to pay same, and will thereby lose the use of the money he would be compelled to pay. All of his capital is actively employed in his business, and to make such payments would seriously damage him in an amount and in a manner that an action at law could not accurately compute or adequately compensate.  *   *   *

"The specific relief prayed for is that the bank may be required to receive payment from the other parties to the suit, and that the other parties be required to pay to the bank the due proportionate share payable by each of the parties, that all of the mutual rights, liabilities, and obligations of the parties be determined. If, by reason of certain facts, later discussed, plaintiff's relief should at present be confined to a part only of the obligations in question, then such relief as this court shall deem proper."

The bill was demurred to by the defendants James J. and John D. Potter, John A. Corbin, J. D. Hill, F. N. Potter, and Richard H. Collins. The answer of the defendant Culligan was filed, and the defendant Roberson has consented to the entry of an order that the bill be taken as confessed as to him. The defendants Corbin, Collins, Hill, and Fred N. Potter demurred to the bill for the following reasons: ·

"That the complainant has not in and by his said bill made out a case for the interposition of a court of equity.

"Because all and every of the matters and things in the said complainant's bill of complaint mentioned and set forth in respect whereof relief is prayed are matters which may be tried and finally determined in a suit at law, and with respect to which the complainant is not entitled to any relief in a court of equity.

"Because a court of equity has no jurisdiction to enforce the payment of promissory note or notes between the maker and indorsers thereof, as set forth in the bill of complaint in this cause.

"Because the bill shows that as to the above-named defendants no cause of action has accrued either at law or in equity; it being shown that all liability of said defendants is evidenced, if at all, by promissory notes which have not yet matured."

The defendants John D. and James J. Potter also demurred to the bill on the grounds that:

"All and every the matters in the said complainant's bill of complaint mentioned and set forth in respect whereof relief is prayed are matters which may be tried and determined in a suit at law, and with respect to which the complainant is not entitled to any relief in a court of equity."

The demurrers having been overruled by the trial judge, these demurring defendants have appealed.

The bill of complaint seems to be barren of any charge that the defendants Fred N. Potter, Corbin, Hill, and Collins have in any way violated the alleged verbal agreement or any written agreement, and does

not contain any averment showing that any of the defendants, are now, or are about to become, insolvent. The main charge deducible from the pleadings and the position of counsel, and upon which it is urged that relief should be granted to the plaintiff, is that James J. Potter and John D. Potter refused to become makers, respectively, and indorsers upon the two $3,000 notes, so that the plaintiff would no longer be connected therewith or liable thereon. There does not seem to be any consideration whatever for the oral agreement which completely changed the terms of the written agreement, and it does not seem to be claimed that the oral agreement supersedes the written one, because all the parties, including the plaintiff, are claiming rights under the written agreement. It does not appear that the plaintiff has paid any debt for which the defendants are liable, as was done in the other case, and we are of the opinion that no such a situation has been here created as entitles the plaintiff to the relief asked for, and the bill cannot be maintained as one for his exoneration. That such a bill has been recognized by equity practice is without question, but the principle upon which such an action is founded is thus stated by Mr. Bispham in his Principles of Equity (7th Ed.), § 27:

"The equity of contribution arises when one of several parties who are liable to a common debt or obligation discharges the same for the benefit of all. In such a case he has a right to call upon his codebtors for contribution. This right is most frequently exercised in the case of sureties, as is also the equity of exoneration, which is the right of a person secondarily liable to call upon the party primarily liable to discharge the debt, or to reimburse him if he has paid it."

The doctrine is thus stated in 7 Am. & Eng. Enc. Law (1st Ed.), p. 485:

"Exoneration is a right which exists between those who are successively liable for the same debt, by which, when a party who is secondarily liable has paid or satisfied the principal's obligation or any part thereof, he is entitled to be reimbursed by the principal debtor, and can bring a bill in equity for that purpose."

See, also, 7 Am. & Eng. Enc. Law (2d Ed.), pp. 326, 330, 32 Cyc. p. 234.

Under the contract or trust agreement the plaintiff has the same rights, and no others, as any of the other signers, any one of whom is just as liable to be required to pay the note as he. It does not seem that the relation of principal and surety was here created, but rather that the plaintiff is in the same position as the other signers, viz., that of principal debtor, and therefore that the principle of exoneration, which might be invoked where the relationship of principal and surety exists, does not apply here.

The trial judge should have sustained the demurrer, and a decree will be entered dismissing the bill of complaint, with costs to the appealing defendants.

STONE, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. BIRD, J., did not sit.