# OSCAR HALLAM AND ANOTHER v. SOUTHERN SURETY COMPANY.[1]

December 9, 1927.

No. 26,356.

**Right of offset denied in case of other insolvent corporations as well as in case of insolvent banks.**

1. In a suit by a receiver of an insolvent corporation upon a claim of the corporation against an insurer or surety, the rule denying the right of offset is the same whether the insolvent corporation is a bank or any other kind of corporation.

**Credit insurance company not entitled to offset amounts paid by it on other policies against debt owed by it on independent contract.**

2. Where a credit insurance company insured the accounts of creditors of a corporation and issued policies to such creditors, the corporation paying the premiums therefor and being incidentally benefited thereby, and the corporation became insolvent and was placed in the hands of a receiver, the insurance company is not entitled to offset amounts paid by it to such creditors after the failure, against an indebtedness owing by it to the corporation, which arose out of a different and independent contract and accrued before the failure.

Corporations, 14a C. J. p. 1035 n. 50, 52; p. 1036 n. 64.

See note in 40 A. L. R. 1096; 21 R. C. L. 1079; 6 R. C. L. Supp. 1299.

Defendant appealed from a judgment of the district court for Ramsey county, McNally, J. in favor of plaintiffs as receivers of the Blekre Tire & Rubber Company. Affirmed.

*F. H. Durham* and *Arthur H. Lindeman,* for appellant.

*Oscar Hallam,* for respondents.

OLSEN, C.

This is an appeal by the defendant from the judgment entered in the district court. The only assignment of error is that the conclusions of law are not justified or supported by the findings of fact.

[1]Reported in 216 N. W. 546.

Stating the facts found by the court in very brief form, it appears that the Blekre Tire & Rubber Company, a corporation, was engaged in manufacturing and selling automobile tires and tubes; that on February 9, 1925, the defendant issued to this company a policy of credit insurance, insuring it against loss due to the insolvency of debtors who had or should purchase tires and tubes from the company, the term of the policy commencing December 1, 1924, and continuing for one year; that the Blekre company sold tires and tubes to one Edward Taylor during December, 1924, and January and February, 1925; that Taylor absconded shortly after he had purchased these goods and was adjudged insolvent as of April 4, 1925, and the defendant was duly notified. When Taylor absconded and became insolvent, the defendant became liable to the Blekre company, under its policy, for the account due from Taylor to the extent provided by the policy, amounting to $2,250, the amount of the judgment herein.

The Blekre company was insolvent on May 29, 1925, and plaintiffs were on that date appointed as receivers to liquidate and wind up its business and duly qualified. Plaintiffs thereafter brought this action to recover from defendant, under the credit insurance policy, the loss sustained by the company on account of the insolvency of Taylor, and were awarded judgment in the amount stated.

The defense presented was two counterclaims, which defendant sought to establish as offsets to plaintiffs' cause of action. These counterclaims arose as follows: On or about September 1, 1924, the defendant, at the instance and request of the Blekre company, which paid the premium therefor, issued to Peninsular Trading Agency a policy of credit insurance, insuring to that agency any account that might become owing to it from the Blekre company, and thereafter and prior to May 29, 1925, the Blekre company became indebted to the Trading Agency for merchandise and rubber bought in the sum of $3,200.28, which was not paid. On or about March 16, 1925, the defendant, in like manner, issued a policy of credit insurance to F. W. Dunbar & Company, insuring any account that might become owing to the Dunbar company from the

Blekre company for rubber and merchandise sold, and thereafter and prior to May 29, 1925, the Blekre company became indebted to the Dunbar company for rubber and merchandise to the extent of $14,949.65, which was not paid. After the failure of the Blekre company, these two creditors made claims upon the defendant under their credit insurance policies, and under the terms of its policies the defendant, on October 12, 1925, paid to the Peninsular Trading Agency the sum of $2,340.25, and on May 20, 1926, it paid to F. W. Dunbar & Company the sum of $9,152, in discharge of its liability to these parties under the policies. At the time of each payment defendant took and received an assignment of each of the claims against the Blekre company and against these plaintiffs as receivers.

Defendant seeks to offset these payments against the recovery on plaintiffs' cause of action and asks for judgment against plaintiffs for the balance. The court denied any recovery or offset by defendant.

1. In their argument here, counsel for defendant frankly admit that unless this case can be distinguished from the case of Veigel v. Converse, 168 Minn. 408, 210 N. W. 162, defendant cannot prevail. Counsel seek to distinguish that case from the present one on two grounds: First, because in the Veigel case the insolvent against whose receiver the set-off was sought was a banking corporation; and, second, because in the present case the Blekre company paid the premiums on and caused the two policies to its creditors to be issued, and this was an arrangement whereby the credit of defendant was used by the Blekre company and therefore these facts should be held to create such an equity in favor of defendant that the doctrine of relation back to the date of issuance of the policies should be applied and the rights of the parties fixed as of that date.

Upon the first ground we are unable to distinguish the Veigel case from this because of the fact that the insolvent against whose receiver the offset was sought in that case was a banking corporation. The reasons for denying the right of offset in these cases are stated in the Veigel case. They are [168 Minn. 409, 410, 412]:

First: When the insolvency occurs "the respective rights and liabilities then existing between it [the insolvent] and its creditors and debtors become fixed."

Second: "If in such a case a surety could set off all of his own debt to the insolvent, he would procure pro tanto much more than the equality to which he is entitled."

That is, the surety in such case would, to the extent that the insolvent was indebted to him, receive payment of 100 per cent on his claim against the insolvent.

Third: "They [the respective claims] arise out of transactions which are not only independent but also unrelated. The demands of defendants come through subrogation to the rights of the obligees of the bonds which they have paid. Those obligees could not have compelled the application to their claims of all of any one asset such as the indebtedness of defendants to the bank."

All these reasons apply with equal force to any insolvent person or corporation whose assets are in the hands of a receiver. The fact that the insolvent corporation was a bank is nowhere referred to as any reason for the decision arrived at.

2. Do the facts that the premiums for the insurance policies issued to its own creditors were paid by the Blekre company, and that such insurance may have been of benefit to the Blekre company, create any special equity in defendant's favor so as to entitle it to the benefit of the rule, sometimes applied, relating its rights back to the dates of the policies? We think not. The defendant was in the business of writing insurance for the payment of premiums deemed by it adequate and profitable. It was not otherwise interested in the affairs of these parties. It was immaterial to defendant who paid the premiums or that the Blekre company received some incidental benefit. It became obligated only to the parties to whom the policies were issued. The relation of debtor and creditor was not created between the Blekre company and this defendant.

The case of U. S. F. & G. Co. v. Wooldridge, 268 U. S. 234, 237, 45 S. Ct. 489, 69 L. ed. 932, 40 A. L. R. 1094, appears to be in point. The court says:

"The two bonds were wholly independent transactions and were not brought into mutual account by an agreement of the parties. The Guaranty Company after the insolvency of the Bank could not have brought a claim against the Bank and used it in setoff. * * * The defendant, however, contends that upon its payment to the Railway Company its subrogation related back to the date of its contract; and we will assume for purposes of argument that this is true. But suppose it is, the right of the Railway Company was simply that of a depositor, a right to share with other unsecured creditors in the assets of the Bank, of which the bond now in suit was a part. There would be no equity in allowing the Railway Company a special claim against this bond. We will assume that if the Railway Company had insured the honesty of the Bank's officers the Bank might have offset the obligation of the company against its claim as a depositor. But it is impossible to treat the succession of the defendant to the Railway Company's claim as effecting such an absolute identification with the Railway Company that one and the same person insured the Bank and made the deposits. The doctrine of relation 'is a legal fiction invented to promote the ends of justice. * * * It is never allowed to defeat the collateral rights of third persons, lawfully acquired.'"

So in the present case, the rights of the Trading Agency and the Dunbar company against the Blekre company were those of unsecured creditors only—the right to share pro rata with other unsecured creditors in the assets of the Blekre company. The defendant, by subrogation or otherwise, acquired no greater rights.

Judgment affirmed.