# IN RE LIQUIDATION OF FARMERS STATE BANK OF NORTH BRANCH.[1]

June 15, 1928.

No. 26,783.

**Statute does not delegate legislative power to state board of deposit.**

1. L. 1921, c. 518, now G. S. 1923, § 106, does not delegate legislative power to the state board of deposit (now the executive council) in violation of art. 3 of the state constitution.

**Statute does not deprive sureties of equal protection of laws.**

2. The act does not deprive the sureties to whom it applies of the equal protection of the laws in violation of the fourteenth amendment to the constitution of the United States, and the legislature had authority to pass the act under its power to legislate for the general welfare and for the exercise of the police power of the state.

**Act governs right of sureties to subrogation when an insolvent bank is liquidated.**

3. Sureties upon a bond given by a bank to secure state deposits are subject to the provisions of the act mentioned; and they cannot compel the commissioner of banks, in charge of an insolvent bank, to pay the state's deposit claim as a preferred claim, where the state seeks recovery from the sureties and not from the funds of the bank except as to any deficiency not recovered from the sureties on the bond.

Banks and Banking, 7 C. J. p. 749 n. 56.
Constitutional Law, 12 C. J. p. 845 n. 56; p. 1183 n. 34.
Subrogation, 37 Cyc. p. 372 n. 38; p. 426 n. 83.

A. J. Veigel as commissioner of banks and statutory liquidator of Farmers State Bank of North Branch appealed from an order of the district court for Chisago county, Stolberg, J. requiring him to pay to the state $3,757.99 out of the assets of the bank for the

[1]Reported in 219 N. W. 916.

·purpose of exonerating the sureties of their liability on a state depository bond executed by them to the bank. Reversed.

*G. A. Youngquist,* Attorney General, and *W. H. Gurnee,* Assistant Attorney General, for appellant.

*R. C. Andrews,* for respondents.

OLSEN, C.

In December, 1921, H. D. Brown, E. W. Allison, C. M. Anderson and J. L. Wahlstrom, herein referred to as the respondents, together with two other persons now deceased, duly executed and delivered to the state of Minnesota a depository bond, with the Farmers State Bank of North Branch as principal therein, to· secure repayment of state funds deposited and to be deposited in said bank. The bank was duly·designated as a depository of state funds. The bank failed and was taken possession of by A. J. Veigel, as commissioner of banks, for the purpose of liquidation, on November 29, 1926, and is now in process of liquidation. The state had on deposit in the bank at the time it failed $7,873.65. After applying certain collateral held by the state, there remains an indebtedness of $3,757.99 due the state. The state, under the provisions of L. 1921, p. 973, c. 518, now G. S. 1923, § 106, elected to proceed against these sureties on their bond and to resort to the funds of the bank only after it had exhausted the security furnished by the bond. Suit was accordingly brought against respondents to collect the said sum of $3,757.99. Respondents then, on November 19, 1927, by petition and motion, applied to the district court for an order requiring the commissioner of banks to pay to the state out of the assets of the insolvent bank the said sum of $3,757.99, so as to exonerate the respondent sureties, on the ground that the state was a preferred creditor of the bank and entitled to payment in full of its claim, and that the respondents, as sureties, were entitled to exoneration. The court granted such order, and the commissioner of banks brought this appeal therefrom.

1. G. S. 1923, § 106, provides that the state may proceed either as a preferred creditor against the assets of the insolvent depository, or as the obligee on the bond against the surety or sureties thereon,

or against both, according as the state board of deposit (now the executive council) may deem advisable; but in case the state receives or recovers any amount of its claim from such surety or sureties, the latter shall not by reason thereof be subrogated to the claim of the state against the assets of the insolvent depository as a preferred creditor.

The state had the same lawful right before this act was passed to proceed either against the assets of the bank as a preferred creditor, or against the sureties on the depository bond, or against both, as it deemed advisable. In other words, the act delegates no power to the board of deposit. The act itself, not the board of deposit, declares what shall be the effect when the state recovers or receives from the sureties, instead of from the bank's funds, payment of the deposit or some part thereof. All the act does and was intended to do was to provide that, where the state receives or recovers from the sureties on a depository bond all or some part of the deposit owing by an insolvent bank, such sureties shall not be subrogated to the rights of the state as a preferred creditor as to the amount so received or recovered. We fail to find in the act any delegation of legislative power or of any power. The board had exactly the same power before the act was passed as it now has.

2. The question then is whether an act of the legislature, providing that where the state recovers of the sureties on a depository bond such sureties shall not be subrogated to the rights of the state as preferred creditors, is constitutional. Respondents contend that the act violates § 1 of the fourteenth amendment to the constitution of the United States; that it violates the guaranty of equal protection of the laws.

A brief consideration of the subject matter and situation to which the act applies may be helpful. All solvent banks and trust companies within the state which have been organized at least one year are eligible to be designated as state depositories. Each bank so designated is required to furnish a corporate or individual surety bond conditioned that there shall be paid to the state treasurer or his order, upon demand, at any place in this state designated by him, free of exchange, all of the state funds deposited in the de-

pository furnishing the bond, at any time while the bond is in effect. The bond is an absolute agreement to pay the deposit on failure or refusal of the bank to pay on demand. G. S. 1923, §§ 98, 99. It is common knowledge that a large number of banks were designated as state depositories under these laws; a number of them failed prior to 1921; the state, being a preferred creditor, received payment in full. If the state collected from the bondsmen, they became subrogated to the rights of the state and filed preferred claims and collected all they had paid. In practically every case the insolvent depository had sufficient assets to pay the state's deposit in full. This absorbed much of the funds and might leave little or nothing for the general depositors. The bondsmen escaped all liability, and the giving of such bonds became practically a mere formality. The act in question was passed for the purpose of benefiting the many innocent and often needy general depositors in these banks by giving to them equal rights with the sureties on these bonds in the assets of such banks. The matter was of public interest and concern.

The act applies only to sureties on bonds of depositories of state funds. The business of banking and the liquidation of banks are matters of vital public interest and affect the public welfare. Such business is subject to reasonable statutory regulations. Hoff v. First State Bank, 174 Minn. 36, 218 N. W. 238, and cases cited. Only sureties who are called upon by the state to pay under the terms of these bonds are affected by the act. They are placed in a class by themselves, and all within that class are treated alike. Banks are a class by themselves in this state, and laws applying only to that class are not invalid as class legislation. 1 Dunnell, Minn. Dig. (2 ed.) § 763a, and cases cited. Legislation applying to sureties on the bonds of such banks, who are required to pay state deposits, would seem equally unobjectionable. Sureties not called upon to pay would have no interest in the matter and are necessarily excluded.

The right to equal protection of the laws is not denied when it appears that the law or course of procedure is applicable to all persons in the state under similar circumstances and conditions.

Walston v. Nevin, 128 U. S. 578, 9 S. Ct. 192, 32 L. ed. 544; M. & St. L. Ry. Co. v. Beckwith, 129 U. S. 26, 9 S. Ct. 207, 32 L. ed. 585; Tinsley v. Anderson, 171 U. S. 101, 18 S. Ct. 805, 43 L. ed. 91; Ozan Lbr. Co. v. Union County Nat. Bank, 207 U. S. 251, 28 S. Ct. 89, 52 L. ed. 195; Williams v. Arkansas, 217 U. S. 79, 30 S. Ct. 493, 54 L. ed. 673, 18 Ann. Cas. 865; Denver v. New York Tr. Co. 229 U. S. 123, 33 S. Ct. 657, 57 L. ed. 1101; Keokee Cons. Coke Co. v. Taylor, 234 U. S. 224, 34 S. Ct. 856, 58 L. ed. 1288. Equal protection of the laws is not denied by legislation which applies only to persons falling within a specified class if it applies alike to all persons within such class and reasonable grounds exist for making a distinction between persons coming within that class and those who do not. 1 Dunnell, Minn. Dig. (2 ed.) § 1700; Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412. The equality clause is satisfied if the law operates equally and uniformly upon all persons in similar circumstances. G. C. & S. F. Ry. Co. v. Ellis, 165 U. S. 150, 17 S. Ct. 255, 41 L. ed. 666; Magoun v. Illinois Tr. & Sav. Bank, 170 U. S. 283, 18 S. Ct. 594, 42 L. ed. 1037.

The power to classify is a legislative power, and it is only when the classification is so manifestly arbitrary as to evince a legislative purpose to evade the constitution that the courts will declare the legislation special and void. State ex rel. Douglas v. Westfall, 85 Minn. 437, 89 N. W. 175, 89 A. S. R. 571, 59 L. R. A. 297; State v. Elliott, 135 Minn. 89, 160 N. W. 204; State ex rel. Flaten v. Ind. School Dist. 143 Minn. 433, 174 N. W. 414; Tait v. Schmahl, 164 Minn. 122, 204 N. W. 637; Petters & Co. v. Veigel, 167 Minn. 286, 209 N. W. 9. The power to legislate in reference to the business of banks and their liquidation is frequently held based upon the police power of the state. Noble State Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. ed. 112, 32 L.R.A. (N.S.) 1062, Ann. Cas. 1912A, 487. The equal protection of the laws clause does not take from the state the power to classify in the exercise of the police power, but admits of a wide scope of discretion in that regard and avoids what is done only when it is without any reasonable basis and is purely arbitrary. C. B. & Q. R. Co. v. McGuire, 219 U. S. 549, 31 S. Ct. 259, 55 L. ed.

328; Mutual Loan Co. v. Martell, 222 U. S. 225, 32 S. Ct. 74, 56 L. ed. 175, Ann. Cas. 1913B, 529; Jeffrey Mfg. Co. v. Blagg, 235 U. S. 571, 35 S. Ct. 167, 59 L. ed. 364. The act here in question would not seem to violate the equal protection clause of the fourteenth amendment.

3. The trial court in its memorandum held that the act in question has no application to the facts and issues presented in the case; that under G. S. 1923, § 9175, the sureties had the right to exoneration without reference to L. 1921, p. 973, c. 518. Section 9175 was enacted prior to 1866; hence the 1921 law is the later act and, if operative, must be held to modify the prior act.

If sureties on these bonds may now proceed, after the failure of the bank, to be exonerated under § 9175, then the act of 1921 becomes wholly inoperative. Instead of paying their liability under the bond and filing their claim against the bank, all such sureties will simply move the court to have the commissioner of banks pay the state's claim in full and thereby relieve the sureties from liability, as was here done. This would effectively nullify the act. It is quite clear that such was not the legislative intent. The right of sureties to exoneration is based upon the right of the surety to reimbursement from the principal debtor. 25 C. J. 169, 170; Comstock v. Corbin, 191 Mich. 639, 158 N. W. 106. Section 9175 embodies the equity practice of enabling a surety to compel a *solvent* principal debtor to exonerate him by paying the debt. Merrill v. Zimmerman, 152 Minn. 333, 188 N. W. 1019. Here the bank was insolvent and its funds were in the hands of the commissioner of banks for distribution to the bank's creditors. These sureties could no longer reach the funds of the bank for reimbursement except by participating in the distribution thereof by the receiver. In effect they had lost their right to reimbursement from the bank except to the extent that they might, after paying the debt to the state, file their claim for reimbursement as creditors of the bank. It is clear that sureties on an ordinary bond could not, after their principal became insolvent and his property passed into the hands of a receiver or trustee in bankruptcy, bring suit against such receiver

or trustee to compel him to pay out of the funds in his hands the full amount of the indebtedness for which the sureties were liable, thus preferring the creditor principal, as well as the sureties, over other creditors. The rights of sureties in such cases have been considered in Veigel v. Converse, 168 Minn. 408, 210 N. W. 162, and Hallam v. Surety Co. 173 Minn. 133, 216 N. W. 546. In the Veigel case [168 Minn. 410] it is said that "if any right to exoneration came into being with the insolvency it was qualified by the insolvency."

While it is true that the commissioner of banks represents the bank, its creditors, and to some extent the state, yet his liability to creditors of the bank is far different from that of the bank while a going concern. He is only obliged to pay to creditors their proper share of the assets of the bank in due course of liquidation, and in doing that he is bound by the laws of the state governing the manner of such payments. He can prefer only such claims as the law authorizes. We construe G. S. 1923, § 9175, not to authorize a suit for exoneration against the commissioner of banks or the receiver or trustee of an insolvent bank, and hold that L. 1921, p. 973, c. 518, applies and prevents exoneration of sureties in a situation of this kind.

The order appealed from is reversed.

HILTON, J. took no part.