STATE v. AMERICAN SURETY COMPANY OF NEW YORK.[1]

January 10, 1930.

No. 27,496.

*Orr, Stark & Kidder,* for appellant.

*G. A. Youngquist,* Attorney General, and *William H. Gurnee,* Assistant Attorney General, for the state.

TAYLOR, C.

In June, 1924, the Braham State Bank as principal and defendant as surety executed to the state a bond in the sum of $5,000, and was duly designated as a depository of state funds to an amount not exceeding $5,000. In March, 1925, the bank, by an instrument in writing, assigned to the state state rural credit bonds of the admitted value of $5,000, "as collateral for the repayment of such state funds as may be deposited in said bank from time to time," and thereupon was designated as a depository of state funds to an amount not exceeding $10,000. The bank became insolvent, and in March, 1928, was closed and placed in liquidation by the commissioner of banks. The state had the sum of $8,203.19 on deposit in the bank at the time it was closed and brought suit therefor against defendant on its bond. Judgment was rendered against defendant

[1] Reported in 228 N. W. 613.

for the sum of $5,000, the amount of the bond. Defendant appealed therefrom.

Defendant admits liability on the bond, but contends that it has the right to require the state to apply in reduction of the debt the rural credit bonds held as collateral for the payment thereof; and that defendant is only liable for the deficiency remaining after such collateral has been so applied. It asks that execution on the judgment be stayed until this collateral has been liquidated and so applied.

G. S. 1923, § 98, provides for the designation of banks as depositories of state funds. Section 99 provides that before any bank shall receive state funds it shall furnish a surety bond to the state conditioned as prescribed therein; also that more than one bond "may be furnished, the aggregate thereof to equal the amount required." Section 102 provides that:

"In lieu of a corporate or personal surety bond, or in addition thereto, any designated depository may furnish as collateral security for state funds" certain specified securities, and in that event "shall execute an assignment and transfer thereof to the state," which assignment shall contain the same conditions required in the surety bonds, "together with authority to the state to sell such securities, or any part thereof, if necessary to realize the full amount of the funds deposited in such depository."

L. 1921, p. 973, c. 518, which appears as G. S. 1923 (1 Mason, 1927) § 106, reads:

"In proceedings to wind up an insolvent bank in which state funds were deposited, the state shall continue to be a preferred creditor, and in cases where a bond with sureties has been given by the depository as security for such deposit, then the state may proceed either as a preferred creditor against the assets of the insolvent depository or as the obligee on such bond against the surety or sureties thereon or against both according as the state board of deposit may deem advisable, but in case the state receives or recovers any amount of its claim from such surety or sureties, the

latter shall not, by reason thereof, be subrogated to the claim of the state against the assets of the insolvent depository as a preferred creditor."

It is clear that the rural credit bonds were not deposited in lieu of the bond executed by defendant but "in addition thereto," and for the purpose of increasing to the sum of $10,000 the amount which could lawfully be deposited in the bank.

It is conceded that the bank could not pledge its assets as security for deposits except as authorized by statute, and that the only deposits for which the statute authorized the pledge of such assets are deposits of public funds. Farmers & M. State Bank v. Consolidated Sch. Dist. No. 3, 174 Minn. 286, 219 N. W. 163. Also that the pledge of the rural credit bonds was made under and pursuant to and in accordance with the statute. Defendant does not claim that they were or could be pledged as security for the liability which defendant had assumed; but claims that they were pledged as security for the same debt for which defendant was surety, and claims that it is entitled to have them applied in reduction of that debt. We are unable to sustain this contention. The statute changes the equitable rule upon which defendant relies. The state had the right to proceed against defendant as surety on the bond without proceeding against the assets of the bank. G. S. 1923 (1 Mason, 1927) § 106; In re Liquidation of Farmers State Bank, 174 Minn. 583, 219 N. W. 916. The statute cited provides that,

"in case the state receives or recovers any amount of its claim from such surety or sureties, the latter shall not, by reason thereof, be subrogated to the claim of the state against the assets of the insolvent depository as a preferred creditor."

This statute abrogates the doctrine of subrogation in such cases. The reason for enacting it is explained in the case cited. An insolvent depository in nearly all cases has sufficient assets to pay the state's claim; and, under the former rule, where the state collected from the surety, the surety reimbursed itself out of the assets, leaving the loss to be borne by the general depositors. The plain purpose of the statute was to obviate this result and permit the assets

to go to the general creditors free from any preference claim on the part of the surety. The legislature evidently intended by this act to permit the state to recover from the surety and to take from the surety the right to proceed against the assets of the bank except in the capacity of a general creditor. As pointed out in In re Liquidation of Farmers State Bank, 174 Minn. 583, 219 N. W. 916, the right of exoneration given by G. S. 1923 (2 Mason, 1927) § 9175, does not apply where the proceeding is governed by the act of 1921 for the reason that such right of exoneration would in effect nullify the later act.

It is the general rule that a creditor may enforce payment from a surety and that the surety must pay, although the creditor holds collateral for the debt furnished by the principal debtor; and that the surety is left to seek reimbursement through such remedies as the law leaves open to him. It is only under exceptional circumstances, only where some peculiar equity exists in favor of the surety, that a court of equity will interfere for his protection and require the creditor to exhaust the security he holds before compelling the surety to pay. Bingham v. Mears, 4 N. D. 437, 61 N. W. 808, 27 L. R. A. 257, in which an exhaustive discussion of this question will be found. The rural credit bonds were pledged to the state pursuant to the statute "as collateral security for state funds." They still remain assets of the bank, although subject to the right of the state to sell them, "if necessary to realize the full amount of the funds deposited in such depository." To permit defendant to compel the state to apply these bonds in reduction of defendant's liability would seem much like permitting it to do indirectly what the statute will not permit it to do directly. However this may be, we are clearly of opinion that the facts do not bring this case within the exception which equity makes to the general rule and on which defendant relies.

The judgment is affirmed.