# STATE v. J. K. ELLIOTT AND ANOTHER.[1]

December 8, 1916.

Nos. 20,138—(7).

**Statute — valid even when not as comprehensive as its title.**

1. A law is not invalid because its scope is not as broad or all inclusive as its title indicates.

**Constitution — class legislation — act valid.**

2. Chapter 431, Laws of 1909 (section 8901, G. S. 1913), entitled "An act to punish the making or use of false statements to obtain credit" does not contravene section 33 of article 4 of the state Constitution as being class legislation nor the Fourteenth amendment to the Federal Constitution, although the act is aimed at those only who make or use false statements to obtain credit from banks, savings banks, and trust companies.

J. K. Elliott and G. E. Sanborn were indicted by the grand jury of Hennepin county for the crime of making and presenting a false statement in writing to a bank for the purpose of obtaining a credit. Defendant Elliott demurred to the indictment and the demurrer was heard and overruled by Dickinson, J., who certified to the supreme court as doubtful the question of the constitutionality of chapter 431, Laws 1909, as being repugnant to section 33, art. 4, of the state Constitution and the Fourteenth amendment to the Federal Constitution. Affirmed.

*Lyndon A. Smith,* Attorney General, and *John M. Rees,* County Attorney, for plaintiff.

*David R. Thomas* and *R. H. McKune,* for defendant.

HOLT, J.

Chapter 431, p. 521, Laws of 1909 (§ 8901, G. S. 1913), entitled "An Act to punish the making or use of false statements to obtain credit," is assailed as unconstitutional by this appeal. Upon overruling a demurrer to the indictment charging appellants with a violation of this statute, the court below certified the case to this court as one involving an im-

[1] Reported in 160 N. W. 204.

portant and doubtful question. However, the memorandum attached to the order overruling the demurrer clearly indicates that the learned trial court entertained no doubt whatever touching the validity of the act.

No authorities need be adduced in support of the state's power to proscribe and punish the acts embraced in the title of this law. And counsel for appellants willingly concedes that no constitutional flaw could be found with the act, were it as broad and comprehensive as its title. In fact, laws with a similar title but penalizing the making or use of false statements to obtain credit or property without distinction as to the party from whom the credit or property is sought, are on the statute books of a majority, perhaps, of the states. But it is claimed that, because the body of the act here covers false statements only when made to banks, savings banks, or trust companies, it is repugnant to both state and Federal constitutional provisions. No constitutional objection can be found in the mere fact that the title is more comprehensive than the scope of the act itself. "The fact that the title of an act is broader than the act itself does not render the enactment invalid under section 27, article 4" of the Constitution. State v. Standard Oil Co. 111 Minn. 85, 126 N. W. 527.

The main contention of appellant is, that the statute is repugnant to section 33, article 4, of the state Constitution providing: "In all cases when a general law can be made applicable, no special law shall be enacted," and that it contravenes the Fourteenth amendment to the Federal Constitution in that it abridges appellant's immunities and privileges and denies the equal protection of laws to persons similarly situated.

So long as the classification adopted by the legislature is not clearly arbitrary or fanciful, there is no violation of section 33, article 4, of the state Constitution (State v. Wise, 70 Minn. 99, 72 N. W. 843; State v. Petit, 74 Minn. 376, 77 N. W. 225 [affirmed 177 U. S. 164, 20 Sup. Ct. 666, 44 L. ed. 716]; Phelan v. Terry, 101 Minn. 454, 112 N. W. 872; State v. Standard Oil Co. 111 Minn. 85, 126 N. W. 527; State v. Rosenfield, 111 Minn. 301, 126 N. W. 1068, 29 L.R.A.(N.S.) 331; Majavis v. Great Northern Ry. Co. 121 Minn. 431, 141 N. W. 806; Mathison v. Minneapolis Street Ry. Co. 126 Minn. 286, 148 N. W. 71, L.R.A. 1916D, 412); and many cases cited in 1 Dunnell, Minn. Dig. § 675. Long ago this state placed banking institutions in a class by themselves in respect to many matters. Their business is regulated and supervised to an

extent not attempted with other business. Their officers and directors are made amenable to severe punishments if the statutes relating to the conduct of banking business are violated. The protection of those who make use of banks—and that means practically all who do business or possess or need money—requires the state to legislate and supervise banking institutions. Banks are repositories of public as well as private funds. Public interest demands that the state, for the purpose of regulating and supervising banking as a business, place it in a class by itself. How then can it be said that the state may not also place banks in a class separate from other business, when the purpose is to afford them a protection against the misrepresentations by the use of which their funds may be depleted and their stability threatened?

Our statutes are not wanting in examples of classifications for the purpose of giving to those employed in a particular business protection, or for the protection of certain business against the fraudulent practices to which it might be subject. Section 9019, G. S. 1913, relating to the protection of motormen on electric cars against the inclemency of weather was attacked as class legislation and therefore violative of section 33, article 4, of the Constitution. The contention was overruled in State v. Smith, 58 Minn. 35, 59 N. W. 545, 25 L.R.A. 759. For many years the law has existed protecting innkeepers against frauds. G. S. 1913, § 8969. It was unsuccessfully assailed as unconstitutional in State v. Benson, 28 Minn. 424, 10 N. W. 471, but, of course, not on the point now raised. Sections 9010, 9020, 9021 and 9025 prohibit and punish various acts only when perpetrated against railway companies. When compared with classifications that have been made by the legislature and with those sustained by this court, we think the one now under consideration is neither arbitrary nor fanciful, but rather one for which good reasons may be adduced. It may well be that as good and cogent reasons exist for protecting all business against those who attempt to obtain credit by use of false statements, but these are to be adduced to the legislature. The courts are not to undo the effect of a step of the legislature to check an evil, simply because two or three additional steps in the same direction were not also taken.

Under no possible view can the act be held to abridge any right, privilege or immunity assured to appellants by the Fourteenth amendment to

the Federal Constitution. No one may be heard to claim a moral or legal right or privilege to obtain a loan or credit by the use of falsehood. And it is difficult to appreciate the propriety of one, charged with a punishable fraud, making the defense that the law he has offended is invalid because it does not penalize the same fraud when perpetrated upon certain other parties who might have been covered by the law, but were not. Of course, a state may not by a criminal statute so glaringly discriminate in the protection given its own citizens, and denied others, as was attempted by the one held repugnant to the equal protection clause of the Fourteenth amendment in Greene v. State, 83 Neb. 84, 119 N. W. 6, 131 Am. St. 626, and where the court held: "The rule that a court will not listen to an objection made to the constitutionality of a law by a party whose rights it does not affect is inapplicable to a case where the vice of the law consists in an unwarranted discrimination between the individuals against whom the aggression thereby forbidden is committed." But there is no discrimination in the law now before us against citizens or residents of other states, nor does the Fourteenth amendment, according to the utterances of the Supreme Court of the United States, invalidate a criminal law designed to protect a certain class because that class was not all embracing or might have covered other classes equally meriting the same protection. Justice Hughes, in Miller v. Wilson, 236 U. S. 373, 35 Sup. Ct. 342, 59 L. ed. 628, L.R.A.1915F, 879, involving the law regulating the hours of labor of women in hotels—a law to some extent interfering with the freedom of contract and legitimate business—holds it to be a "well established principle that the legislature is not bound, in order to support the constitutional validity of its regulation, to extend it to all cases which it might possibly reach. * * * If the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied." And Justice Holmes in Keokee Consolidated Coke Co. v. Taylor, 234 U. S. 224, 34 Sup. Ct. 856, 58 L. ed. 1288, observes: "But while there are differences of opinion as to the degree and kind of discrimination permitted by the Fourteenth amendment, it is established by repeated decisions that a statute aimed at that which is deemed an evil, and hitting it presumably where experience shows it to be most felt, is not to be upset by thinking up and enumerating other instances to which it might have been applied equally well, so far as the court can see. That is for the legislature to

judge unless the case is very clear." This was all said in respect to legitimate business involving the freedom to contract with reference to lawful endeavor.

The authorities upon which appellants rely do not, in our judgment, lead to the conclusion that the act in question offends any provision of the state or Federal Constitutions. Where a criminal statute attempts to interfere with legitimate business and the freedom of persons to contract with respect to labor or property, it may only be sustained insofar as it appears to be a proper exercise of the police power of the state. "The legislature has no authority to pronounce the performance of an innocent act criminal, when the public health, safety, comfort or welfare is not interfered with." Gillespie v. People, 188 Ill. 176, 58 N. E. 1007, 52 L.R.A. 283, 80 Am. St. 176. Such is not this case. The case just cited, as well as Bailey v. People, 190 Ill. 28, 60 N. E. 98, 54 L.R.A. 838, 83 Am. St. 116; Horwich v. Walker-Gordon Laboratory Co. 205 Ill. 497, 68 N. E. 938, 98 Am. St. 254; Sellers v. Hays, 163 Ind. 422, 72 N. E. 119; Luman v. Hitchens Bros. Co. 90 Md. 14, 44 Atl. 1051, 46 L.R.A. 393, and State v. Wagner, 69 Minn. 206, 72 N. W. 67, 38 L.R.A. 677, 65 Am. St. 565, relate to matters innocent and legitimate in themselves which the statutes involved in each case undertook to denounce as criminal. In State v. Herman, 75 Mo. 340, a law respecting notaries public which could apply only to certain notaries in one city, was held special legislation. Therein this test as to a general law, applied in other cases, was approved, viz: "A statute which relates to persons or things as a class, is a general law, while a statute which relates to particular persons or things of a class, is special." In view of later rulings of the United States Supreme Court on the subject of classification the conclusion of the court in Chicago, M. & St. P. Ry. Co. v. Westby, 178 Fed. 619, 102 C. C. A. 65, 47 L.R.A. (N.S.) 97, is not now of much weight. City of Denver v. Bach, 26 Colo. 530, 58 Pac. 1089, 46 L.R.A. 848, held no reason existed for placing clothing merchants in a class apart from those engaged in other business with reference to an order penalizing their doing business on Sunday. In McClelland v. City of Denver, 36 Colo. 486, 86 Pac. 126, 10 Ann. Cas. 1014, the court sustained an ordinance prohibiting barber shops to be open on Sunday and explains the ground of the decision in City of Denver v. Bach, supra.

**The order is affirmed.**