ALVA HOFF v. FIRST STATE BANK OF WATSON.[1]

March 2, 1928.

No. 26,495.

**Valid existing laws do not impair obligation of a contract.**
1. Valid laws in force at the time a contract is made enter into and become a part of the contract and cannot be said unconstitutionally to impair the obligation of such contract.

**L. 1925, c. 38, governs contracts made thereafter.**
L. 1925, c. 38, does not tend to impair the obligation of contracts made after the law went into effect.

**1925 act not special legislation because applying only to state banks.**
2. State banking corporations are properly placed in a class by themselves for purposes of legislation, and the act mentioned is not class or special legislation because it applies only to such corporations.

**Discrimination against unsecured creditors not class legislation.**
Secured and unsecured creditors have different rights and may properly be distinguished and classified in insolvency laws, and the act in question is not discriminatory or class legislation because of the fact that secured creditors are not affected thereby.

**Municipal corporations.**
The state and municipal corporations may be placed in a separate class.

**Liberty of contract defined.**
3. Liberty of contract means freedom to contract within the law governing the subject and the persons making the contract, and the act here in question does not infringe such right.

**Banks subject to regulation by law.**
The business of banking is affected with a vital public interest and is subject to regulation by law in the interest of public welfare.

[1] Reported in 218 N. W. 238.

**Liquidation of state banks by commissioner.**

4. The commissioner of banks is given practically entire control over the liquidation of state banks and in such proceeding represents and acts for the bank, its stockholders and all of its creditors.

**Nonassenting creditors not concluded by reorganization agreement.**

5. The action of the commissioner in approving a reorganization agreement under this act is not conclusive upon creditors who do not assent thereto, and such creditors may, in an action to recover on their certificates or claims, or in other appropriate action, contest the reorganization agreement and litigate all questions which could have been raised on a hearing before the commissioner.

Banks and Banking, 7 C. J. p. 480 n. 55; p. 482 n. 64; p. 491 n. 39.
Constitutional Law, 12 C. J. p. 949 n. 13; p. 988 n. 41; p. 1200 n. 30.
Contracts, 13 C. J. p. 560 n. 37.
Statutes, 36 Cyc. p. 993 n. 92; p. 1000 n. 18; p. 1013 n. 64.

See 6 R. C. L. 855; 2 R. C. L. Supp. 229; 4 R. C. L. Supp. 447.
See note in 5 L.R.A.(N.S.) 874; 25 L.R.A.(N.S.) 1217; 3 R. C. L. 379; 1 R. C. L. Supp. 816; 5 R. C. L. Supp. 170.

Action in the district court for Chippewa county to recover upon a certificate of deposit. From an order, Qvale, J. overruling a demurrer to the answer, plaintiff appealed, the court having certified the question presented as important and doubtful. Affirmed.

*C. E. Purdy* and *O. G. Haugland,* for appellant.

*C. A. Fosnes* and *John C. Haave,* for respondent.

*Albert F. Pratt,* Attorney General, and *W. H. Gurnee,* Assistant Attorney General, filed a brief amici curiae in support of the contention of the respondent.

OLSEN, C.

Appeal by plaintiff from an order overruling a demurrer to the answer, the court having certified that the question raised is important and doubtful.

Defendant is a state bank. On May 26, 1925, plaintiff deposited in this bank $233.73 and received therefor a certificate of deposit in the usual form, payable in six months with interest. The certificate has not been paid and plaintiff sues to recover thereon.

The answer, as a defense, alleges that the defendant bank became insolvent and was closed and taken over by the commissioner of banks on February 27, 1926; that thereafter a reorganization of the bank was had under and in accordance with the provisions of L. 1925, p. 37, c. 38, and the bank, as so reorganized, was reopened on July 29, 1926; that a reorganization agreement was duly made and entered into by more than 90 per cent of the depositors and unsecured creditors, and the reorganization duly approved by the commissioner of banks; that by the agreement holders of certificates of deposit and other unsecured creditors agreed to a reduction of 50 per cent of the amount owing each of them, and agreed that new certificates of deposit in the reduced amount, with payment thereof spread over a number of years, were to be issued, and that certain assets of the bank were to be placed in a trust account and, if and when collected, were to be paid pro rata to holders of certificates of deposit and other unsecured creditors, in addition to the 50 per cent.

It is not claimed that plaintiff signed or consented to the reorganization agreement, but it is claimed that he is bound thereby, and hence that he is limited to the provisions made for him in said agreement and cannot recover in this action on the old certificate.

The question presented and argued is the constitutionality of the law mentioned. That the law was complied with is not denied.

1. L. 1925, p. 37, c. 38, went into effect March 3, 1925. It became part of the state laws governing and regulating the liquidation of insolvent banks. It is a part of our insolvency laws as to state banks. The federal bankruptcy law does not apply to banking corporations, and the liquidation of national banks only is regulated by federal law; hence the states are left free to enact laws governing the liquidation of insolvent state banks.

Due to the financial situation existing at the time and since the law was passed, many state banks were then in course of liquidation or have since failed, and many such banks (stated in one of the briefs to be 28 in number) have been reorganized and reopened pursuant to this law. The question presented is therefore important and affects many banks and individuals. The law is remedial. Its purpose was to meet the existing situation and assist and benefit

depositors and unsecured creditors of these banks by giving them an opportunity to work out of their difficulties with less loss and to better advantage than by carrying through liquidation by the commissioner.

Plaintiff contends that the law indirectly impairs the obligations of contracts and in that way violates art. 1, § 11, of the state constitution, and art. 1, § 10, of the federal constitution, prohibiting the passage of laws impairing the obligation of contracts. These constitutional provisions prohibit the enactment of any law which attempts to change the contract rights of parties to any contract made before the law is enacted so as to impair the obligations of such existing contracts, but as to the contracts made after the enactment of the law a state statute cannot be said unconstitutionally to impair the obligation of contracts made subsequent to its enactment. Abilene Nat. Bank v. Dolley, 228 U. S. 1, 33 S. Ct. 409, 57 L. ed. 707; C. B. & Q. R. Co. v. Cram, 228 U. S. 70, 33 S. Ct. 437, 57 L. ed. 734. As to such a law, "all the substantial provisions of the law  *  *  * became part of the contract between the parties." O'Brien v. Krenz, 36 Minn. 136, 138, 30 N. W. 458; Bohn v. McCarthy, 29 Minn. 23, 11 N. W. 127; Farmers & Mer. Bank v. Federal Res. Bank, 262 U. S. 649, 43 S. Ct. 651, 67 L. ed. 1157, 30 A. L. R. 635. The laws existing at the time and place of the making of the contract, and where it is to be performed, enter into and form part of it. Monthly Instalment Loan Co. v. Skellet Co. 124 Minn. 144, 144 N. W. 750; Walker v. Whitehead, 16 Wall. 314, 21 L. ed. 357; Edwards v. Kearzey, 96 U. S. 595, 24 L. ed. 793. State insolvency laws are not invalid so far as they discharge the person and after-acquired property of the debtor from liability for any contract made with citizens of the state subsequent to their enactment. Denny v. Bennett, 128 U. S. 489, 9 S. Ct. 134, 32 L. ed. 491; Brown v. Smart, 145 U. S. 454, 12 S. Ct. 958, 36 L. ed. 773.

The objection that L. 1925, p. 37, c. 38, tends to impair the obligation of contracts made subsequent to its enactment is not tenable.

The case of Goenen v. Schroeder, 8 Minn. 344 (387), relied on by plaintiff, is readily distinguished from the case at bar. At the time the mortgage there in question was given, the law of 1858, then

in for,ce, gave the mortgagor one year in which to redeem from a foreclosure sale. This provision was followed by the clause in parentheses, "(or such other time as may be prescribed by law)." The court properly held this clause inoperative, and held that a subsequent act passed by the legislature, extending the time for redemption to three years, did not apply to mortgages made prior to its passage. That this clause in the act of 1858 was mere surplusage and did not grant or withhold any right or remedy, hence did not enter into or affect any contract made, is apparent. The Goenen case has been cited a number of times as authority on the proposition that the law in force at the time a contract is made enters into and becomes a part of the contract and that a law enacted after the contract is made, changing the prior law, cannot affect the contract or impair the obligation thereof. The decision has been given no other effect.

2. Is L. 1925, p. 37, c. 38, class or special legislation, or discriminatory? Article 1, § 2, and art. 4, §§ 33, 34, of the state constitution, and the 14th amendment to the federal constitution are invoked. The act is not special or class legislation because of the fact that it applies only to state banking corporations. These corporations are a class by themselves in this state and justify laws applying only to that class. 1 Dunnell, Minn. Dig. (2 ed.) § 763a; State v. Elliott, 135 Minn. 89, 160 N. W. 204; State ex rel. Flaten v. Ind. School Dist. 143 Minn. 433, 174 N. W. 414; State ex rel. Dybdal v. State Sec. Comm. 145 Minn. 221, 176 N. W. 759; Petters & Co. v. Veigel, 167 Minn. 286, 209 N. W. 9.

The act applies to all depositors and unsecured creditors of the bank except the state, counties, cities, villages, townships and school districts. .That secured creditors who are not depositors are not affected, would not seem vital. Secured creditors are distinguished from unsecured creditors in the federal bankruptcy law and in . state insolvency laws. Generally they must either surrender their security and come in as unsecured creditors, or must exhaust their security and come in only for any deficiency, or they may remain out and rely only on the security. The classification here as to them is not arbitrary or fanciful. Mathison v. Minneapolis St. Ry.

Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412; State v. Elliott, 135 Minn. 89, 160 N. W. 204; Tait v. Schmahl, 164 Minn. 122, 204 N. W. 637.

Deposits of the state, counties, cities, villages, townships and school districts are exempted. These depositors are municipal or public corporations created by the state for public and governmental purposes. Their funds are secured by official bonds and, as to the state and counties at least, are further secured by depository bonds, and may properly be so secured as to the others. Presumably these corporations would neither gain nor lose by the reopening of the bank, and their exemption is based on reasonable grounds. Constitutional guaranties and limitations are to be given a reasonable and practical construction. As said in the case of Noble State Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. ed. 112, 32 L.R.A.(N.S.) 1062, Ann. Cas. 1912A, 487:

"We must be cautious about pressing the broad words of the Fourteenth Amendment to a drily logical extreme. Many laws which it would be vain to ask the court to overthrow could be shown, easily enough, to transgress a scholastic interpretation of one or another of the great guaranties in the Bill of Rights. They more or less limit the liberty of the individual or they diminish property to a certain extent."

3. The appellant urges that this law "attempts to infringe and abridge freedom of contract or liberty of contract" and thereby violates art. 1, §§ 2 and 7, of the state constitution and the 14th amendment of the federal constitution.

There are so many laws limiting the powers of persons and corporations as to contracts that the terms "freedom of contract" and "liberty of contract" cannot consistently be used without qualification. If the expression "freedom to contract within the law" be substituted, we have perhaps a fairly definite meaning expressed. If the classification is proper and the law otherwise valid, then all the parties to a contract are entitled to and can claim is that they shall have the same right to contract as is given to all others in the same class and contracting on the same subject. Usury laws limit

the power of persons and corporations as to the rate of interest which can be agreed upon. Yet the exemption of building and loan associations therefrom has been held constitutional. Zenith B. & L. Assn. v. Heimbach, 77 Minn. 97, 79 N. W. 609. A negotiable promissory note is a contract to pay a definite sum of money at a given time; yet an insolvency or bankruptcy law, in force at the time, may compel the holder to accept in full payment thereof a lesser amount and at a different time, or may discharge the debtor therefrom without any payment. And the constitutionality of such laws cannot now be questioned.

A state may, without conflicting with the 14th amendment, restrict in many respects the power of persons and corporations to enter into contracts. Minn. Wh. Gr. Co-op. M. Assn. v. Huggins, 162 Minn. 471, 203 N. W. 420; Holden v. Hardy, 169 U. S. 366, 18 S. Ct. 383, 42 L. ed. 780; Williams v. Fears, 179 U. S. 270, 21 S. Ct. 128, 45 L. ed. 186; Carroll v. Greenwich Ins. Co. 199 U. S. 401, 26 S. Ct. 66, 50 L. ed. 246; Ozan Lbr. Co. v. Union County Nat. Bank, 207 U. S. 251, 28 S. Ct. 89, 52 L. ed. 195; Heath & M. Mfg. Co. v. Worst, 207 U. S. 338, 28 S. Ct. 114, 52 L. ed. 236. The liberty of contract guaranteed is freedom from arbitrary restraint, not immunity from reasonable regulation to safeguard the public interest. The question is whether the restrictions of the statute have reasonable relation to a proper purpose. Miller v. Wilson, 236 U. S. 373, 35 S. Ct. 342, 59 L. ed. 628, L. R. A. 1915F, 829.

The supervision and control of the state over the business of state banks, as well as over the liquidation of such banks, concerns a matter of vital public interest and affects the public welfare. If legislation on such subject reasonably tends to promote the best interest of the creditors of such banks and the public, then it should not be held unreasonably or abritrarily to restrict the liberty to contract within the law in force when such contract is made. A business in which the public has an interest or use and which affects the public welfare is subject to regulation by statute. Munn v. Illinois, 94 U. S. 113, 24 L. ed. 77. When a business is affected with a public interest, it ceases to be exclusively private and becomes subject to regulation by law in the interest of public welfare.

If the business of receiving and storing grain in warehouses owned by private parties is affected with a public interest and subject to regulation, the business of banking, receiving and caring for the money of the people is much more vitally affected with a public interest and of much more public concern. Many more people use banks for the deposit and safe-keeping of their funds than use grain warehouses for storage of grain. Whatever may have been the status of banks in ages past when but few people had money therein, the use of banks has now become so general and necessary that they have practically become public institutions. Banks in some countries are created and operated as governmental agencies, as for instance the Bank of England. Our own federal reserve banks are practically in that class. So the business of banking is clearly affected with a public interest and subject to reasonable statutory regulations. Noble State Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. ed. 112, 32 L.R.A.(N.S.) 1062, Ann. Cas. 1912A, 487; State v. Richcreek, 167 Ind. 217, 77 N. E. 1085, 5 L.R.A.(N.S.) 874, 119 A. S. R. 491, 10 Ann. Cas. 899; Blaker v. Hood & Kincaids, 53 Kan. 499, 36 P. 1115, 24 L. R. A. 854; Weed v. Bergh, 141 Wis. 569, 124 N. W. 664. That this power of regulation is usually rested on the police power of the state does not seem important. The power to regulate flows from the facts that the business is affected with a vital public interest and that public welfare justifies and requires regulation and restriction thereof.

4. The liquidation of national banks, as already noted, is provided for by federal laws, R. S. § 5234, and Act of June 30, 1876, 19 St. 63, Code of Laws 1926, §§ 191, 192, p. 271. Under the provisions of these laws the comptroller of the currency, acting through a receiver appointed by himself, is given entire control of the liquidation of these banks. He takes over the bank and its assets without any proceeding in court and without previous notice, and goes on to liquidate the bank. In a few particulars, the compromise of claims, sales of property and purchase of property, he is required to obtain the approval of a court of competent jurisdiction; otherwise he proceeds without reference to the court and apparently without giving any notice, except to creditors to file their claims.

Our state laws provide for the liquidation of state banks in much the same manner, but have added thereto by L. 1925, p. 37, c. 38, the provisions stated for the reorganization and reopening of the banks. That this is a remedial act and for a beneficial purpose has already been noted. The commissioner of banks, the same as the comptroller, when he has taken over an insolvent state bank, represents and acts for the bank and its stockholders and creditors as well. He is a state officer designated for such purposes. Case v. Terrell, 11 Wall. 199, 20 L. ed. 134; Cockrill v. Abeles (C. C. A.) 86 F. 505; Kennedy v. Gibson, 8 Wall. 498, 19 L. ed. 476. Harriet State Bank v. Samels, 164 Minn. 265, 204 N. W. 938. The commissioner, when he approves a reorganization agreement, is so acting for the bank and its stockholders and creditors. He is presumed to be an impartial agent for that purpose, and to act fairly, impartially and justly. The prescribed petition being presented and acted upon by him, his action should be binding upon all the creditors, unless shown to be and set aside as arbitrary, unjust or fraudulent.

5. The action of the commissioner in approving the composition agreement is not a final judgment in a judicial proceeding. It is in the nature of an administrative order and is not conclusive as against nonassenting creditors. Opportunity to be heard and to contest his action is required. But such hearing need not necessarily be given before action is taken by him. In judicial proceedings such hearing must be given before a final or conclusive judgment or decision is rendered. Wilson v. Standefer, 184 U. S. 399, 22 S. Ct. 384, 46 L. ed. 612; Wells, Fargo & Co. v. Nevada, 248 U. S. 165, 39 S. Ct. 62, 63 L. ed. 190. In other proceedings by boards, commissions and public officers, it would seem to be sufficient if opportunity to be heard is given before the party affected has been concluded or deprived of property or rights. The opportunity to be heard and to contest the order or proceeding need not be given in express terms or in the same law that provides for the order or proceeding. State ex rel. R. R. & W. H. Comm. v. C. M. & St. P. Ry. Co. 38 Minn. 281, 37 N. W. 782; Pelkey v. National Surety Co. 143 Minn. 176, 173 N. W. 435; Pittsburgh, C. C. & St. L. Ry. Co. v. Hartford City, 170

Ind. 674, 82 N. E. 787, 85 N. E. 362, 20 L.R.A.(N.S.) 461; C. B. & Q. R. Co. v. State, 47 Neb. 549, 66 N. W. 624, 41 L. R. A. 481, 53 A. S. R. 557; Id. 170 U. S. 57, 18 S. Ct. 513, 42 L. ed. 948; Public Clearing House v. Coyne, 194 U. S. 497, 24 S. Ct. 789, 48 L. ed. 1092; Noble State Bank v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. ed. 112, 32 L.R.A.(N.S.) 1062, Ann. Cas. 1912A, 487; Assaria State Bank v. Dolley, 219 U. S. 121, 31 S. Ct. 189, 55 L. ed. 123; Lankford v. Platte Iron Works Co. 235 U. S. 461, 35 S. Ct. 173, 59 L. ed. 316; Wadley S. Ry. Co. v. Georgia, 235 U. S. 651, 35 S. Ct. 214, 59 L. ed. 405.

The action of the commissioner of banks does not expressly determine the rights of nonassenting depositors or certificate holders. It cannot be held to be conclusive as to them. They may, as in this case, bring suit directly to recover their deposits or may, by any appropriate action, contest the validity of the act of the commissioner. In such suit or action they are entitled to be heard and to present all matters that they could have presented upon a hearing before the commissioner. As said by the Nebraska court in the case cited [47 Neb. 549, 550]:

" 'Due process of law,' * * * is satisfied whenever an opportunity is afforded to invoke the equal protection of the law by judicial proceedings appropriate for the purpose and adequate to secure the end and object sought to be attained."

As to administrative proceedings, "the party affected by them may always test their validity by a suit instituted for that purpose and this is supposed to give him ample protection." 1 Dunnell, Minn. Dig. (2 ed.) § 1642, and cases cited.

Order affirmed.