In re FARMERS' EXCHANGE BANK OF TORONTO. SMITH, State Superintendent of Banks, Appellant, v. TEXLEY, et al, Respondents.

(225 N. W. 307.)

(File No. 6391. Opinion filed May 7, 1929.)

*Walter A. Gronna,* of Clear Lake, and *Perry F. Loucks,* of Watertown (*Roy E. Willy,* of Sioux Falls, of Counsel), for Appellant.

*Law, Dobie & Law,* of Clear Lake, for Respondents.

BROWN, J.   On March 30, 1926, Farmers' Exchange Bank of Toronto suspended business and was taken over by the superintendent of banks for the purpose of liquidation.   A plan of reorganization and agreement was adopted by depositors representing more than 80 per cent of the deposits at the date of suspension, and, upon a petition setting forth the facts, the superintendent of banks applied to the circuit court for an order to show cause why the bank should not be reinstated as a solvent corporation under the reorganization plan and agreement, and why all other depositors should not be held subject to the agreement as though they had joined in the execution of it.   On the return day, respondents, who were nonconsenting depositors, and residents of this state, appeared specially and objected to the jurisdiction of the court on the same grounds made the basis of special appearance in No. 6221, Farmers' & Merchants' Bank v. Tomlinson (S. D.) 225 N. W. 305.   The objection was overruled, and respondents made return substantially similar to that in Farmers' & Merchants' Bank v. Tomlinson, supra.   Evidence was introduced on behalf of both appellant and respondents, and at the close of all the evidence the court, without making any findings of fact or conclusions of law, made an order denying the application on the following grounds: (1) Because the articles of agreement had been executed by more than 80 per cent, but not by all, of the depositors.   (2) Because the objecting depositors hold deposits amounting to over $25,000, and

they cannot be bound by the terms of the agreement without their consent. (3) Because chapter 104, Laws of 1925, is unconstitutional in so far as it purports to hold the nonconsenting depositors subject to the reorganization agreement without their consent, in conflict with article 6, §§ 12 and 20, of the state Constitution. (4) Because the articles of agreement release stockholders of their liability under article 18, § 3, of the Constitution, and section 8993 of the Revised Code of 1919, against the protest of the objecting depositors. (5) Because the reorganization plan and agreement were unfair to the depositors of the suspended bank and do not properly safeguard their rights, and deprive depositors and creditors of the right to recover on stockholders' liability, and for excessive loans against the officers and directors of the bank. (6) Because the general plan of reorganization does not appear to the court to be just or equitable. (7) Because it appears to the court that the reorganization plan contemplates the formation of a new bank, with different stockholders and with a new capital stock, and the court has no jurisdiction to approve the formation of such a new bank as contemplated by the petition and provided in the reorganization plan. From this order the superintendent of banks appeals.

The objections made under the special appearance, and the first three grounds specified in the court's order, have all been held untenable in Farmers' & Merchants' Bank v. Tomlinson, supra. The contention that the release of stockholders from double liability, and of directors and officers from excessive loans, was not specially discussed in the opinion in the Tomlinson Case, although presented by the record in that case.

■■ In the instant case, there is nothing in the record showing any liability for excessive loans or that anything could be recovered from directors or officers responsible therefor, if any excessive loans ever existed. Moreover, the reorganization plan does not undertake to release any one liable on account of excessive loans. But, as was said in the Tomlinson Case, the power to enact such legislation as that under consideration rests upon the same principle as the power to enact bankruptcy and insolvency laws, under which a debtor may be discharged on composition of his obligations sanctioned by the court. So far as appears from the record in this case, none of the claims of the objecting depositors

existed at the time the Reorganization Act went into effect, and "state insolvency laws are not invalid so far as they discharge the person and after-acquired property of the debtor from liability for any contract made with citizens of the state subsequent to their enactment. Denny v. Bennett, 128 U. S. 489, 9 S. Ct. 134, 32 L. Ed. 491; Brown v. Smart, 145 U. S. 454, 12 S. Ct. 598, 36 L. Ed. 773." Hoff v. First State Bank, 174 Minn. 36, 218 N. W. 238.

The state superintendent of banks, "when he has taken over an insolvent state bank, represents and acts for the bank and its stockholders and creditors as well. He is a state officer designated for such purposes. Case v. Terrell, 11 Wall (U. S.) 199, 20 L. Ed. 134; Cockrill v. Abeles (C. C. A.) 86 F. 505; Kennedy v. Gibson, 8 Wall. (U. S.) 498, 19 L. Ed. 476; Harriet State Bank v. Samels, 164 Minn. 255, 204 N. W. 938. The commissioner, when he approves a reorganization agreement, is so acting for the bank and its stockholders and creditors. He is presumed to be an impartial agent for that purpose, and to act fairly, impartially, and justly. The prescribed petition being presented and acted upon by him, his action should be binding upon all the creditors, unless shown to be, and set aside as, arbitrary, unjust, or fraudulent." Hoff v. First State Bank, supra.

If, acting in good faith and according to his best judgment, the superintendent of banks, with the consent and at the request of over 80 per cent of the depositors shown by their signatures to the agreement and plan of reorganization, believes it would be for the best interest of all depositors and creditors of the bank to release stockholders from double liability and officers and directors from liability for excessive loans, "his action should be binding upon all the creditors, unless shown to be, and set aside as, arbitrary, unjust, or fraudulent." Pursuant to this rule, it is the duty of the court to uphold a reorganization plan and agreement unless the court, on evidence before it, should find such plan and agreement to be arbitrary, unjust, or fraudulent. It is not contended that the reorganization agreement in the present case is either arbitrary or fraudulent, but the sixth ground of the court's decision is that the general plan of reorganization does not appear to the court to be just or equitable. In what respect the plan is unjust or inequitable the court does not say; indeed, it is not said to be

unjust or inequitable, but the matter is rather put in negative form: That it does not appear to be just or equitable. The fact that depositors representing more than 80 per cent of the total deposits in the bank and numbering 124 individuals have expressly agreed to the plan, while not more than 16 individuals representing less than 20 per cent of the deposits object, is evidence that a great majority of the depositors, both in numbers and in amount of deposits represented, do not consider the plan to be either unjust or inequitable. Speaking of the somewhat similar situation of numerous holders of bonds secured by one mortgage, the Supreme Court of the United States, in Shaw v. Little Rock & Ft. S. Ry. Co., 100 U. S. 605, 25 L. Ed. 757, said: "To allow a small minority of bondholders, representing a comparatively insignificant amount of the mortgage debt, in the absence of any pretense even of fraud or unfairness, to defeat the wishes of such an overwhelming majority of those associated with them in the benefits of their common security, would be to ignore entirely the relation which bondholders, secured by a railroad mortgage, bear to each other. * * * If there are differences of opinion among the bondholders as to what their interests require, it is not improper that he [the trustee] should be governed by the voice of the majority, acting in good faith and without collusion, if what they ask is not inconsistent with the provisions of his trust."

We think this language appropriate to the situation in the case at bar. While $10,000 or $11,000 might have been collected on the stockholders' double liability, the evidence shows that, under the proposed reorganization plan, stockholders in the suspended bank, in order to make possible the reorganization, paid in over $19,000 in cash to pay an indebtedness of the bank to the Federal Reserve Bank of Minneapolis, and secured the release of nearly $60,000 of notes of the bank which were held by the Federal Reserve Bank as collateral. There is no evidence in the record tending to show that, if the reorganization plan should not be carried through and the superintendent of banks should proceed to liquidate and collect the assets of the closed bank any more would be realized for the depositors and creditors of the bank than would be realized under the reorganization plan. We think the evidence does not justify the order of the trial court denying approval of the reorganization plan.

■ The contention that, because there are some new stockholders and new capital provided, the reorganized bank is therefore a new bank, is untenable. A new bank would have to have new articles of incorporation and a new certificate of incorporation from the secretary of state. The proposed reorganized bank is still the same bank, and is no more a new bank than if it had remained solvent and a going concern and some or all of its stockholders had sold their stock to others, who continued its operation.

The order appealed from is reversed.

SHERWOOD, P. J., and POLLEY, CAMPBELL, and BURCH, JJ., concur.