166 So. 1

**Ex parte TENNESSEE VALLEY BANK.**

**8 Div. 670.**

Supreme Court of Alabama.

Jan. 16, 1936.

Rehearing Denied March 5, 1936.

Bradley, Baldwin, All & White, of Birmingham, and S. A. Lynne, of Decatur, for petitioner.

L. E. Birdzell and John W. Lapsley, both of Washington, D. C., amici curiæ for Federal Deposit Ins. Corporation.

Julian Harris, Norman Harris, and A. J. Harris, all of Decatur, for respondent.

548

GARDNER, Justice.

Petition for mandamus to require that a certain action instituted by Mary Vellisarian against the Tennessee Valley Bank be transferred from the law side of the circuit court of Morgan county to the equity docket, and to grant defendant's (in said law case) motion filed in the circuit court for that purpose.

For a proper review of the questions, petitioner has pursued the appropriate remedy. Smith v. Grayson, 214 Ala. 197, 107 So. 448; Ex parte Louisville & Nashville R. R. Co., 211 Ala. 531, 100 So. 843; Jones v. Wright, 220 Ala. 406, 125 So. 645.

In the motion for a transfer, specific reference is made to the cause pending on the equity docket of said court to which the motion was directed. Cogburn v. Callier, 213 Ala. 38, 104 So. 328. It was not therefore necessary that copies of these proceedings be made a part of the motion, as the court took judicial knowledge thereof. Louisville & Nashville R. R. Co. v. Shikle, 206 Ala. 494, 90 So. 900; Moon v. Hines, 205 Ala. 355, 87 So. 603, 13 A.L.R. 1020.

The petition here properly contained these pleadings that this court may be sufficiently informed for appropriate action in the premises.

Respondent's motion to dismiss is not well taken.

Considered upon its merits, we conclude the demurrer to the petition is likewise due to be overruled.

The Tennessee Valley Bank was a corporation with banking powers, and with its principal place of business at Decatur, Ala. Under its charter, however, the bank conducted a banking business at numerous localities in North Alabama, a privilege considered of much value, particularly in view of the present inhibitions contained in section 6354, Code 1923, and a matter of importance in consideration of the question of a reopening of the bank upon reorganization.

In common with all other banks in the state, the bank was closed on proclamation of the Governor on February 28, 1933, and so far as general transaction of business was concerned, remained closed until the date of its reopening as a reorganized bank in October, 1934. On March 22, 1934, the property and business of the bank was surrendered by its board of directors for liquidation to the superintendent of banks (section 6300, Code 1923), and notice to creditors duly published. Section 6310, Code 1923.

To the time of such surrender the business of the bank was limited to the receipt and disbursement of special deposits as authorized by the statute (Gen.Acts 1933, Ex.Sess., p. 39), and no withdrawal of deposits made prior to March 1, 1933, was permitted, with the exception of withdrawals of 5 per cent. of the net balance of depositors on March 2d, 3d and 4th, authorized by the state banking board. The special deposits received were protected as trust funds by segregated assets. They are not here involved, and may be laid to one side.

The superintendent of banks appraised the assets of the bank, and found it to be insolvent. And upon the hearing of the petition of the superintendent, the circuit court of Morgan county, sitting in equity (the court exercising jurisdiction in the premises—section 6307, as amended by Gen.Acts 1931, p. 244; sections 6312, 6315, 6317, Code 1923), found that the bank had no surplus or undivided profits, and that its capital stock was without value. In his petition the superintendent recommended as in the best interest of the creditors and in the public interest generally that there be a reorganization of the bank. In addition to its deposit liability, the bank was largely indebted on account of loans secured by pledge of valuable assets.

A loan must therefore be obtained in order to effect a sound reorganization, the stockholders being unable to furnish sufficient funds to place the bank in a solvent condition. The only source for the loan appeared to be the Reconstruction Finance Corporation, commonly referred to as the "R. F. C."

In recommending the bank's reorganization, the superintendent was but co-operating with the depositors and common creditors, as authorized by statute (Gen.Acts 1932, Ex.Sess., p. 11), of whom more than three-fourths in value of deposits and common claims had executed an agency agreement wherein five named individuals were given broad powers to effectuate such purpose. In pursuance of such authority, these agents presented a comprehensive plan made an exhibit to the petition filed by the superintendent in the circuit court

The agency agreement recited as its purpose not only the protection of the interest of the depositors, but also the resumption of the "unrestricted operation of this banking institution throughout the Tennessee Valley."

The plan submitted looked to a like end, and expressly provided that the bank, as reorganized, be discharged from all liability to existing creditors and depositors (exception not important), who must look only to the assets in the hands of the agents, and whose claims are to be enforceable only in the manner therein provided, that is, in "the court in the cause pending therein with reference to the liquidation of the bank."

The plan of reorganization recognized that its consummation was dependent, not only upon the ability of the superintendent to borrow funds from R. F. C. or other lenders, but also upon the security of an agreement on the part of the lender "that neither the reorganized bank nor any of its assets or property shall be liable or stand as security for the payment of any part of such loan."

And the superintendent in his petition likewise stated such exemption from liability was essential, and he would not approve any plan without such release from liability. The plan authorized the superintendent to proceed with a negotiation for a loan, and subject to the approval of the court to furnish security therefor.

There are many details unnecessary here to enumerate. Suffice it to say that upon the hearing of the petition of the superintendent, and after due notice given as provided by law (Gen.Acts 1932, Ex.Sess., p. 11), the plan of reorganization was approved by the court in its decree of April 16, 1934, and in accord with the statute (Gen.Acts 1932, Ex.Sess., p. 11), it was decreed that "all the depositors and common creditors are hereby required to accept said plan." The court further decreed that the superintendent and the named agents were authorized to proceed with the execution of said plan, and were directed from time to time to report their acts in respect thereto, and for further decree of the court. Jurisdiction for all further orders and decrees was expressly reserved.

We have previously noted the value of the privilege of engaging in branch banking authorized by the charter of the bank, and the desire for a continuance thereof, to the end that these various localities might be accorded banking accommodations as theretofore, and the difficulty in the way by reason of the present prohibition against branch banking under our statute (section 6354, Code 1923). There was necessity, therefore, from a practical standpoint, that the corporate entity be retained, and for successful operation following a reopening it was also essential that the bank, as reorganized, be released, not only from its depositors and common creditors, but also free from any liability on account of any loan made, to secure capital funds for reopening, without which funds no reopening could be had. The superintendent was given ample authority under the statute (Gen.Acts 1932, Ex.Sess., p. 21) to borrow money and pledge assets of the bank therefor, but any note executed therefor was to be treated as the obligation of the bank.

It developed, in the negotiation for a loan by the superintendent, as authorized by the court's decree, that while the R. F. C. was willing to make the loan to the superintendent, yet was unwilling to release it from liability for any deficiency. In order, therefore, to effectuate the purpose of reorganization and place the bank upon a sound basis when reopened, some change of procedure was necessary. In this change R. F. C. co-operated, and a corporation was organized under the laws of Alabama, known as the Valley Mortgage Company, with capital funds furnished by individuals. The assets upon the security of which R. F. C. had agreed to make the loan were sold to this new corporation, which was to obtain the loan from R. F. C., and pay over to the superintendent the proceeds of such loan for application towards the expenses of liquidation and distribution to depositors and creditors. That there might arise a necessity for a loan to be made in this manner, rather than directly by the superintendent, was contemplated by the plan which had been approved by the court in its decree of April 16, 1934. Broad authority was conferred upon the agents in the agency agreement to transfer or cause to be transferred to themselves the assets of the bank, to borrow money, to pledge any or all of the assets, and to create a body corporate to serve in carrying out the purposes therein set forth, and the plan itself contains similar provisions.

There were many details necessitated by the changed plan unnecessary here to note,

all of which were set out in the petition of the superintendent, upon a hearing of which, on September 5, 1934, the court decreed that the procedure outlined therein was in accordance with the plan theretofore approved and involved no change except as to details of procedure which were authorized. The hearing was upon the petition with exhibits thereto, answer of the bank and of the named agents, and upon testimony taken in open court, and being of the opinion that the change of plan was but a matter of change of procedure in details, it was further decreed that notice to any other parties need not be given.

The effective date of the plan was fixed at such time as the superintendent should authorize the reopening of the bank in conformity to the decree, and jurisdiction of the cause was expressly retained. This decree bears date of September 5, 1934, and among other provisions contains the following: "It is hereby ordered, adjudged and decreed that no depositor or creditor of the bank of any class or character shall have or may assert any claim on any account whatever against the bank when reopened on account of any liabilities owing by the bank as it now exists except such as may in conformity with the 'Plan' and in pursuance hereof be assumed by the bank upon its reopening but that as provided in the 'Plan' the bank as reorganized and reopened shall be and it is hereby discharged from and of all liability with respect to the same."

Normal resumption of business by the reorganized bank was begun on October 6, 1934, under proclamation of the superintendent. On December 19, 1934, the superintendent made due report of the reopening of the bank and of his acts in connection with the liquidation of said bank, and sought approval of the court thereof.

Upon the hearing of this petition, on January 8, 1935, the acts of the superintendent were approved, and that the reopening of the bank was in conformity with law, the plan, and decrees of the court.

On December 14, 1932, Mary Vellisarian made a deposit in the bank, and on December 18, 1934, she instituted in the circuit court of Morgan county an action at law to recover of the defendant therein named (Tennessee Valley Bank) the balance due on such deposit. Thereupon said defendant moved for a transfer of that action to the equity docket of the said circuit court that her claim may be heard and determined in that certain proceeding pending in said court entitled "In the matter of Tennessee Valley Bank, in Liquidation, in Equity, No. 2815." The motion was denied, and this petition for mandamus follows as a result of such denial.

There are in several states statutes similar to ours (Gen.Acts 1932, Ex.Sess., p. 11) making provision for reorganization and reopening of closed banks under a plan authorized by three-fourths in value of all depositors and common creditors, approved by the state superintendent of banks, and the court having jurisdiction of the cause. Dunn v. Love, 172 Miss. 342, 155 So. 331, 92 A.L.R. 1323; Dorman v. Dell, 245 Ky. 34, 52 S.W.(2d) 892; Nagel v. Ghingher, 166 Md. 231, 171 A. 65, 92 A.L.R. 1315; Farmers' & Merchants' Bank v. Tomlinson, 55 S.D. 185, 225 N.W. 305; Hoff v. First State Bank, 174 Minn. 36, 218 N.W. 238; McConville v. Fort Pierce Bank, 101 Fla. 727, 135 So. 392.

■ Certainly, so far as the Federal Constitution is concerned, the validity of such statutes was established by the United State Supreme Court in the recent decision of Doty v. Love, 295 U.S. 64, 55 S. Ct. 558, 561, 79 L.Ed. 1303, 96 A.L.R. 1438, wherein was upheld the Mississippi law, which is in most substantial respects closely akin to our own. In that opinion appears the following pertinent statement: "All that the statute does upon its face is to change the method of liquidation. * * * The Constitution of the United States does not confer upon the depositors a vested right to liquidation at the hands of a state official."

Nor is the act of 1932 relating to the matter of reorganization and reopening of closed banks violative of our State Constitution. We find in it no illegal delegation of legislative power to the superintendent of banks, but merely a conferring of authority or discretion as to the execution of the law, to be exercised under and in pursuance thereof. Compton v. Alabama Power Co., 216 Ala. 558, 114 So. 46.

■ Our decisions, in harmony with the current of authority elsewhere, are to the effect that on account of the nature of the banking business and the great public interests to be protected by wise legislation concerning the same, it is of such a character as to come within the internal police powers of the state, and the law in ques-

tion is to be viewed with this established principle in mind. McDavid v. Bank of Bay Minette, 193 Ala. 341, 69 So. 452.

So viewed, the validity of the act is established. The act is also to be interpreted in the light of other statutory provisions concerning insolvent banks to be found in chapter 263, Code 1923 (section 6275 et seq.), and the acts hereinabove noted.

As observed by the Minnesota court in Hoff v. First State Bank, supra, this act became a part of our state law governing and regulating the liquidation of insolvent banks.

But more than this, these statutes are also to be considered in the light of the law applicable to insolvent corporations generally (section 7062 Code 1923), that the assets of insolvent corporations constitute a trust fund for the payment of creditors, which may be marshaled and administered in courts having equity jurisdiction in this state. This was pointedly demonstrated in Oates v. Smith, 176 Ala. 39, 57 So. 438, 439, where the court, speaking of this general statute in connection with that as to the appointment of a receiver for an insolvent bank, said that the effect of the latter was "to create a statutory receivership, subject, of course, to the general principles which govern that branch of equity law, and subject specifically to section 3509 of the Code, which provides that 'the assets of insolvent corporations constitute a trust fund for the payment of the creditors of such corporations, which may be marshaled and administered in courts of equity in this state.' These two statutes are, of course, parts of a single system, and co-operate in the clearly defined purpose of the Legislature to promptly sequester the assets of insolvent state banks, to the end that such assets may be impartially administered in favor of all the creditors." And the set-off there attempted was repudiated in large part upon the theory that its allowance would defeat the impartial distribution of the assets of the banks, which constitute a trust fund in equity, without any preference to one creditor at the expense of another.

After insolvency is established, a creditor's claim, so far as the assets are concerned, gives him no more than the right to file his claim seasonably and to share ratably in their distribution. Reference was made to this general statute in Montgomery B. & T. Co. v. Walker, 181 Ala. 368, 61 So. 951, with the observation that independent of that statute the court had declared that the assets of an insolvent bank constituted a trust fund for the payment of its creditors. See, also, First National Bank v. Green, 221 Ala. 201, 128 So. 394.

And clearly the language of section 6312 of the Code signifies the legislative intent that all claims against such insolvent bank be adjudicated in the equity court having jurisdiction of the affairs of the bank, and, as observed in Jackson v. Whitesell, 213 Ala. 369, 104 So. 662, the whole purpose and scheme of the statute would exclude the conclusion that the process of liquidation should be delayed until claims against the assets of the bank in the hands of the receiver or trustee could be litigated in a different tribunal. As well stated by the court in Timmons v. People's Trust Co., 114 W.Va. 618, 173 S.E. 79, 81, "Prior to the insolvency of a bank, the claim of an ordinary depositor is personal; but, after insolvency, his claim becomes communal and is subject to class treatment," and, as said in Farmers' & Merchants' Bank v. Tomlinson, 55 S.D. 185, 225 N.W. 305, 306, "the property of the failed bank is virtually in custodia legis."

The regulation and enforcement of trusts is one of the original and inherent powers of a court of equity (21 Corpus Juris 116), and it is also a well-understood principle that a court of equity once having assumed jurisdiction of a cause on any equitable ground will reach out and draw into its consideration and determination the entire subject-matter, and retain such jurisdiction until all matters involved in the litigation between the parties, or growing out of and connected with the subject-matter of the suit, are finally disposed of. 10 R.C.L. § 120, page 370; 21 Corpus Juris 134. Or, as expressed by this court in a concrete case (Hamby v. Hamby, 165 Ala. 171, 51 So. 732, 733, 138 Am.St.Rep. 23): "If, on a bill filed for that purpose, the chancery court assumes jurisdiction of the administration of an estate, all incidental questions may and must be there settled, and nothing can thereafter be done in the probate court." And in Ex parte Jonas, 186 Ala. 567, 64 So. 960, 962, was the observation that "the administration of the trust estate is subject to the jurisdiction of the chancery court, and, when that juris-

diction is rightfully assumed, that the trust is to be administered through the court, and not through the trustee except as an instrument of the court." See, also, Walker, Sup't of Banks, v. Mutual Alliance Trust Co., 196 Ala. 154, 71 So. 697.

Plaintiff (Mary Vellisarian) in the law action was a common creditor, an ordinary depositor with no preferential claim against the assets of the bank, but entitled only to share ratably with other creditors similarly situated. It cannot, therefore, well be questioned that had she brought such a suit at law, pending the administration of the trust estate and prior to reorganization and reopening of the bank, the equity court under general equitable principles could have stayed her hand and required her claim to be presented and determined in the suit therein pending (Watson v. Hamilton, 211 Ala. 688, 101 So. 609; Walker, Sup't of Banks, v. Mutual Alliance Trust Co., supra; Hamby v. Hamby, supra; 10 R.C.L., § 120), and we think it equally clear our removal statutes (section 6486 et seq., Code 1923) are sufficiently broad to accomplish the same purpose.

In such a case, it is not so much the question of a remedy at law, but that of disturbing the jurisdiction of the equity court which has assumed jurisdiction, and requiring a defendant to plead in an inappropriate tribunal. The jurisdiction of the equity court once invoked and exercised is not to be thus defied, and the purpose of its administration to that extent thwarted or impeded.

The rule is not changed merely by reason of the reorganization and reopening of the bank. Jurisdiction of the cause is still retained, and following the filing of the action at law, the equity court approved the acts of the superintendent in reopening the bank, and still retained jurisdiction of the cause. The very purpose of the plan of reorganization approved by the court was that the bank may retain its corporate entity with its existing charter powers, and be reopened as a solvent going concern free from liability of claims of any depositor or common creditor.

The capital stock of the bank as reorganized, other than that purchased by the agents individually, was under the approved plan to be issued to the agents to be held in trust by them for the account of the depositors, creditors, and stockholders of the bank. It appears, therefore, that the capital funds of the reorganized bank belong to depositors who occupy the same position as the plaintiff in the law action.

The decree of April 16, 1934, was rendered upon a hearing after due notice, with objections interposed by two depositors, Mary Vellisarian interposing no protest, though she subsequently declined to accept the dividend check handed her. We do not understand that the binding effect of this decree is by her seriously questioned.

Following this decree, certain changes in the administrative details were found advantageous to all concerned, and the court found they worked no change in the plan itself, but only in the matter of procedure, and the decree of September 5, 1934, approved the acts of the superintendent without again giving notice, the bank and agents having filed answers.

It is this want of notice in the decree of September 5, 1934, that plaintiff, Mary Vellisarian, so largely relies upon for her right to pursue her action at law, in view of the fact that the reorganized and reopened bank is the same corporate entity, and the decree without binding effect because rendered without notice to her. But her contention overlooks the trust fund theory of the court's jurisdiction, and its pending administration, as well as the further fact that said plaintiff was duly given notice of the matter of reorganization by the decree of April 16, which made provision for all essential questions regarding the substance of such reorganization. True, there were details to be worked out, and other reports by the superintendent contemplated. Having been properly in court, further notice of these matters was not necessary. Renfro Bros. v. Merryman, 71 Ala. 195; Dunn v. Love, 172 Miss. 342, 155 So. 331, 92 A.L.R. 1323.

And in addition to this, the superintendent of banks as a statutory receiver and trustee in fact acts for the bank, its stockholders and creditors. In re Farmers' & Merchants' Bank, 55 S.D. 190, 225 N.W. 307; Hoff v. First State Bank, 174 Minn. 36, 218 N.W. 238. As such receiver, he was required to make his report to the court administering a trust fund, and the matter of approval was not dependent upon statute, but had its origin in equity procedure. Doty v. Love, 295 U.S. 64, 55 S. Ct. 558, 79 L.Ed. 1303, 96 A.L.R. 1438, supra.

But we agree with the equity court that the change worked in reality no change in the plan, but only in the matter of detail as to procedure. Clearly, no greater burden was assumed, and no disadvantage effected by a change from a loan direct to the superintendent to one to a corporation formed for that purpose. Indeed such a procedure was anticipated in the original agency agreement and in the plan approved April 16th. It was therefore authorized under the broad provisions of the plan already approved.

Nor is there merit in the suggestion that discretion was vested in the newly organized corporation in regard to the loan rather than in the superintendent. The superintendent in his petition asked that he be authorized to make the application, and the decree of September 5th directed that he file such application with the R. F. C. that such loan be made to the new corporation. The application was so made and approved by the court in the decree of January 8, 1935. The loan was in the same amount as originally intended to be made direct to the superintendent, and the procedure followed appears to have been the only practical method to reach the ends sought. The advancement of some part of the subscription out of the assets of the bank was but in substance a borrowing of money which the agency agreement authorized, and was justified under the broad provisions of the decree of April 16th.

The superintendent also reported upon the matter of the withholding of amounts withdrawn by depositors during March 2, 3, and 4, 1933. But that concerned only a temporary withholding. The superintendent was in doubt as to whether or not the amount of dividends to which depositors of the bank were entitled, both under the law and under the plan, should be reduced by such payments, and he therefore, very properly, invoked the jurisdiction of the court for instructions thereon. The court decreed the amounts so paid should be withheld from the dividends paid, but expressly provided that such withholding should be without prejudice to the rights of such depositors and creditors to claim that such deduction should not be made.

There was, therefore, no finality, but an express reservation of a decision on the question. But we forego further discussion.

We think it clear that the equity court was correct in its decree to the effect that in substance there was no change in the plan, but only change in details of procedure, resulting in no disadvantage to any interested party.

Plaintiff in the law action is clearly seeking a preference, and it is no answer to say she is pursuing no assets of the bank administered by the court, for in large part the capital funds of the bank as reopened and against which she brings the suit are constituted of the assets of the bank before the reorganization, and which stock is held in trust by the agents for said plaintiff, as well as all other creditors similarly situated. Her claim is no longer a personal one, but is "communal and subject to class treatment." She is entitled to share ratably with the others, but to no preferential consideration. Her contention rests upon an erroneous view as to the effect of the reorganization and reopening of the bank. Although it is the same legal entity as before, yet it is such by virtue of these liquidation proceedings, and its reopening in this manner and the use of its assets for that purpose are but a different method of liquidation and nothing more. Her attack is collateral, and we are clear to the view there is no invalidity appearing upon the face of the proceedings, and that her rights are properly to be protected in the equity court. To that court her claim belongs.

The submission here is on demurrer to the petition. And while it would seem that as all matters therein stated are of record, and that the decision here concludes the question of transfer, yet we feel only justified to enter the order in conformity to the submission, that is, that the demurrer be overruled. It will be so ordered.

Respondent may file answer within thirty days, if so advised. Ex parte McFry, 218 Ala. 21, 117 So. 464.

Demurrer overruled.

BOULDIN, FOSTER, and KNIGHT, JJ., concur.